STATE EX REL. PAUL McCARTHY v. CIVIL SERVICE COMMISSION OF MINNEAPOLIS AND OTHERS.

152 N. W. (2d) 462.

August 4, 1967—No. 40,500.

*Conrad J. Carr*, for appellant.

*Keith M. Stidd*, City Attorney, and *Arvid M. Falk*, Assistant City Attorney, for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the District Court of Hennepin County affirming a decision of the Civil Service Commission of the city of Minneapolis discharging relator, Paul McCarthy.

Relator was employed by the city as a welder on May 16, 1960, and continued in that employment until discharged.

Minneapolis Civil Service Commission Rule 9.03 provides:

"The absence of an officer or employee from duty for a period of three successive days or longer, without leave and without notice to his superior officer of the reason for such absence and of his intention to return, shall be considered in effect a resignation."

In 1965 relator desired to take at least part of his vacation so that he could attend a canoe race in Canada. The race commenced on July 9 and ended on July 11. Apparently relator built canoes as a hobby and had entered a canoe in the race which he wished to observe. He began

his vacation on July 6, 1965, and traveled by auto to Rocky Mountain House, Canada, which is approximately 1,300 miles from Minneapolis. He returned to work on July 20. It is the contention of the employer that he was supposed to be back to work on July 14.

At the time the facts involved here arose, the city employed five welders. On account of freeway construction and other work it was necessary to allow only one welder to be away on vacation at a time. Relator asked for his vacation during the time of the canoe race. Another employee, Edward Kilbey, had seniority rights and had intended to go on his vacation during the time that relator requested. Kilbey gave up his prior rights so that relator could commence his vacation on July 6. Relator returned to Minneapolis on July 18 and called his foreman, Gerald P. Stefens, asking where he should report for work. Instead of returning on the 19th, he took sick leave and returned to work on the 20th. On the 19th he had been informed by letter that in view of his absence for more than three days without leave, under the civil service rules he had resigned his position. He demanded a hearing, which was at first denied him, but later he was given a hearing upon the grounds that resignation under Rule 9.03 was tantamount to a discharge and that he was entitled to a hearing under the civil service rules. Thereafter charges were filed against him for "[d]isobedience of a superior officer's order to return from vacation on Wednesday, July 14, 1965," which was a violation under Minneapolis Civil Service Commission Rule 12.02(f).

On December 16, 1965, the commission determined that on account of relator's absence from duty on July 14, 15, and 16 "without having been granted any leave for such absence and without having given notice to his superior officer or to anyone in authority in the Division of Public Works or in the Water Department of any reason for such absence and without having given anyone any notice of his intention to return," he had violated an official order given by his foreman, Stefens, to return to work on July 14, "which failure to return amounts to an act of insubordination and serious breach of proper discipline; and which did result in loss to the City in that it impeded the work scheduled to be done on that day." As a result of those findings it was determined that relator

be removed from the position of welder in the service of the city of Minneapolis.

Thereafter a review was had by certiorari in the District Court of Hennepin County, following which the decision of the commission was upheld.

■ The question here is whether there is substantial evidence to sustain the findings of the commission. The rules applicable to the scope of our review in a matter of this kind have recently been considered in State ex rel. Jenson v. Civil Service Comm. 268 Minn. 536, 130 N. W. (2d) 143, certiorari denied, 380 U. S. 943, 85 S. Ct. 1023, 13 L. ed. (2d) 962, and need not be reexamined. Our prior cases are collected there. Under the Jenson case and prior cases, it is clear that our review in these matters is quite narrow in scope. The function of finding the facts rests with the commission. Resolving conflicts in the testimony and determining the weight to be given to it and the inferences to be drawn are part of the factfinding process and rest with the commission. Neither the trial court nor this court has a right to substitute its judgment concerning facts and inferences to be drawn therefrom. Our only function in a case of this kind is to determine whether there is substantial evidence, considering the record as a whole, to sustain the findings of fact.

■ The decision of the commission rests largely on a conversation had between relator, his foreman, and others respecting the time he was to return. There was no formal order made specifying his return date. In fixing vacations it was not customary to use written orders. A vacation would be scheduled by the foreman and the return date would be placed on a worksheet. The worksheets in evidence here show that it was expected that relator would be back to work on the 14th.

The plan followed was substantially as follows: Each Friday the foremen of the various crews prepared schedules illustrating the work to be performed and the men who would be utilized to accomplish it. The schedule prepared by relator's foreman on the Friday preceding the week beginning Monday, July 12, establishes that it was contemplated that relator would be on the job July 14, 15, and 16. Relator was one of five welders employed by the Minneapolis Water Department. The job on which he was scheduled to work required three welders. During

his absence, in view of his failure to return to work on the 14th, it was necessary to transfer a welder from another job to replace him. While relator claims that there was no definite date set for his return, the evidence will sustain a finding that he understood that he was to be back on the job July 14. Relator is supported by the negative testimony of some of the other employees who stated that they heard the conversation in which the time of vacation was discussed and did not hear any definite date mentioned for relator's return. There is evidence from the foreman and the man who gave up his vacation so that relator could have the desired dates that the discussion did include an understanding that relator was to return to work on July 14. It was for the commission to resolve this conflict in the testimony.

We agree with the trial court that the evidence is not as convincing as it might be but, as stated by the trial court, "there was a definite conflict in the testimony and we are unable to say that decision for discharge was not supported by substantial evidence." It follows that there must be an affirmance.

The commission held that the effective date of the discharge was July 19, 1965. The trial court held that under Johnson v. Village of Cohasset, 263 Minn. 425, 116 N. W. (2d) 692, relator was entitled to the benefits of the Veterans Preference Act, and that under Minn. St. 197.46 the discharge could not be effective until after relator was given a hearing. As a result the court changed the effective date to December 16, 1965. No appeal has been taken from that part of the court's order, and the city stands ready and willing to make good any loss of earnings relator may have suffered from the time he was denied the right to work until the effective date of his removal.

Affirmed.