# RUTH A. GIBSON v. CIVIL SERVICE BOARD.

171 N. W. (2d) 712.

October 31, 1969—No. 41460.

*Firestone, Fink, Krawetz, Miley, Maas & Noonan* and *James P. Miley,* for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *John L. Devney* and *James Kelley,* Special Assistant Attorneys General, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

NELSON, JUSTICE.

This is an appeal from an order of the Ramsey County District Court denying a motion to reverse a determination of the State Civil Service Board sustaining the discharge of petitioner

and to reinstate petitioner to her permanent position with back pay.

On July 7, 1967, petitioner, Ruth A. Gibson, a clerk-typist in the Bureau of Criminal Apprehension who had attained civil service status, was discharged from her employment pursuant to a letter signed by H. P. Higgins, superintendent of the bureau. The letter set forth three allegations which, according to the record, served as reasons for Mrs. Gibson's discharge:

"On March 2, 1967, you addressed a letter to Raymond Vecellio, deputy Commissioner of Administration, containing a series of complaints and allegations. You did not have permission from any supervisor to do so. In subsequent interviews with you, you admitted that the complaints were: based on gossip you had overheard, based on unfounded suspicions you formulated, or were normal problems that could be anticipated in any new operation. The two most serious allegations you admitted were not true.

"On May 10, 1967 you appeared before the Civil Service Board, without permission or knowledge of any supervisor, on a matter which did not involve you and which was none of your concern.

"On about June 28, 1967, you called a supervisor in the Civil Service department, again without permission or knowledge of any supervisor, and made serious charges of misconduct against two employees of this bureau. These charges were made without any information or knowledge on your part."

The record thus discloses that Mrs. Gibson was discharged by reason of "insubordination to [her] supervisors, a complete lack of courtesy and consideration for other employees, and complete willingness to use gossip and slander against other employees, even though without foundation."

After her discharge from the bureau, petitioner appealed to the Civil Service Board, which after a hearing sustained the dismissal on November 9, 1967. Mrs. Gibson thereafter petitioned the Ramsey County District Court pursuant to Minn. St. 15.0424 for an order reinstating her to her position with full back pay.

On April 23, 1968, the district court denied her petition, and on May 21, 1968, she appealed to this court.

The issue before us is whether there was substantial evidence to support the Civil Service Board's findings and its conclusion that there was "just cause" for the removal of Mrs. Gibson from her job pursuant to Minn. St. 43.24.

The criteria for dismissal of a civil service employee are set forth in § 43.24, subd. 1, which in relevant part provides:

"No permanent employee in the classified service * * * shall be removed, discharged, suspended without pay for more than 30 days, or reduced in pay or position, *except for just cause,* which shall not be religious or political." (Italics supplied.)

The term "just cause" was discussed in State ex rel. Hart v. Common Council, 53 Minn. 238, 244, 55 N. W. 118, 120, wherein this court said:

"* * * 'Cause,' or 'sufficient cause,' means 'legal cause,' and not any cause which the council may think sufficient. The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of its duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal. In the absence of any statutory specification the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it."

It seems clear that under the foregoing definition the reason for dismissal must relate to the manner in which the employee performs his or her functions. See, Hagen v. State Civil Service Board, 282 Minn. 296, 164 N. W. (2d) 629, where this court held that testimony before the State Civil Service Board of prior

breaches of duty by an employee may be properly received as bearing upon his competence and efficiency in performing his work.

The record in the instant case would indicate that the bureau did not contend Mrs. Gibson was incompetent in the performance of her duties as a clerk-typist. The Civil Service Board found, however, two of the charges made constituted reasonable grounds for Mrs. Gibson's dismissal and were substantiated by the evidence and testimony.

This court has made it clear in cases involving the functioning of the Civil Service Board that the scope of review in matters of this kind must necessarily be narrowly limited. The functions of factfinding, resolving conflicts in the testimony, and determining the weight to be given to it and the inferences to be drawn therefrom rest with the administrative board. An appellate court is justified in interfering with an administrative agency's decision only where it appears that the agency has not kept within its jurisdiction; that it has proceeded upon an erroneous theory of law; or that its actions are arbitrary and unreasonable or not supported by substantial evidence on the record as a whole. See, Minn. St. 15.0425; Swenson v. Civil Service Comm. 276 Minn. 532, 151 N. W. (2d) 254; State ex rel. McCarthy v. Civil Service Comm. 277 Minn. 358, 152 N. W. (2d) 462; State ex rel. Jenson v. Civil Service Comm. 268 Minn. 536, 130 N. W. (2d) 143, certiorari denied, 380 U. S. 943, 85 S. Ct. 1023, 13 L. ed. (2d) 962; State ex rel. Saari v. State Civil Service Board, 265 Minn. 441, 122 N. W. (2d) 174.

The strictures of this type of judicial review require that both the trial court and this court refrain from substituting their judgment concerning the inferences to be drawn from the evidence for that of the agency. Unless there is manifest injustice, this limitation applies even though it may appear that contrary inferences would be better supported or we would be inclined to reach a different result, were we the triers of fact. Swenson v. Civil Service Comm. *supra*; State ex rel. Jenson v.

Civil Service Comm. *supra*. See, State ex rel. Lund v. City of Bemidji, 209 Minn. 91, 295 N. W. 514; Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67.

The functions of this court as applied to the matter before us are to determine whether the board's action was arbitrary and capricious and whether there is substantial evidence, considering the record as a whole, to sustain the decision of the Civil Service Board. The evidence must be considered in the light most favorable to the board as the prevailing party. See, Otter Tail Power Co. v. MacKichan, 270 Minn. 262, 133 N. W. (2d) 511.

The evidence presented to the board we state as follows: On March 2, 1967, Mrs. Gibson wrote the letter previously referred to herein to Mr. Vecellio, complaining of conditions in the Bureau of Criminal Apprehension. At the time of the writing, Mrs. Gibson was a probationary employee and had not yet been certified as a clerk-typist. Edward T. Mattson, the assistant superintendent of the bureau, had wanted to discharge Mrs. Gibson on the basis of this letter and some conversations the two had had. However, Mrs. Gibson was ultimately certified. Near the end of March 1967, on the basis of the letter, Mr. Mattson and Mrs. Gibson had a conversation in which he directed her "[not] to discuss Bureau business or Bureau employees, except for herself, with any person outside of the Bureau without first getting permission from myself or her supervisor, Mrs. Seidl. I told her that if she had a complaint to make, if she brought it to Mrs. Seidl and it was referred to me, if we couldn't reasonably resolve the issue, we would give her permission to talk to anyone she wanted to outside of the Bureau * * *." Mrs. Gibson's response to the directive was, "[Y]ou needn't think I'm going to obey that order."

On May 10, 1967, without her supervisor's approval, Mrs. Gibson, on her own time, appeared before the Civil Service Board to object to a provisional extension of another employee's employment and was consequently suspended on May 26, 1967, for 5 days for breaching instructions. On May 31, 1967, the Civil

Service Board asked the bureau to rescind the suspension and stated in a letter addressed to Mrs. Gibson that "every state employee should feel free to bring to the attention of the Civil Service * * * Board any problems relating to their individual positions or to the state service in general." Although the suspension was rescinded, the letter of dismissal still cited Mrs. Gibson's appearance before the board as one of the reasons for her discharge. Mrs. Gibson contends that in view of the Civil Service Board's actions in this respect, her appearance before the board cannot furnish "just cause" for her dismissal.

It appears that the charge upon which the dismissal was ultimately based related to a telephone call made by Mrs. Gibson without prior approval of her supervisor to Mrs. Vera Likins, a Civil Service Department employee working in a supervisory capacity at the time. With respect to this charge, Mrs. Likins testified:

"Q. I wonder if you could give us the context of that telephone call.

"A. Mrs. Gibson called me and made reference to an examination taken by Sheron Peltier, and at least raised the question as to whether Sheron Peltier might have passed the examination (which Mrs. Gibson said she had heard from within the office from authentic sources) and inasmuch as she felt that she could not have done a particularly good job in the examination on the occasion when she was reputed to have passed, when she apparently had failed the test prior to that time. Now, I had no knowledge of the examination. I didn't know Sheron Peltier and I informed Mrs. Gibson that I really had nothing to do with the examinations and would have to refer her questions to the Chief Examiner, Mr. Barry.

"Q. Was that the extent of the phone conversation, Mrs. Likins?

"A. She indicated that she had reason to suspect, though she did assure me that she could not support the statement in any way, that someone might have taken the examination for Mrs.

Peltier, and she did say that—and I can't recall this for sure, but I do believe—either Mrs. Peltier or the woman who may have taken the examination for her had very backhand writing, slanted very far to the left, and it could be easily recognized, she said, by just reference to the handwriting if someone had in fact substituted for her."

Mrs. Likins agreed, however, on cross-examination that Mrs. Gibson was raising a question rather than making a firm accusation.

After considering the foregoing evidence the Civil Service Board sustained petitioner's discharge although specifically stating, in a memorandum accompanying its decision, that its determination was made without giving any weight or consideration to the charge based on the letter written by petitioner to Mr. Vecellio. In support of its determination that the other charges constituted reasonable cause for petitioner's dismissal, the board pointed out that one of the fundamental duties of an employee is the obligation to yield obedience to all reasonable rules and orders of his employer. As stated earlier, the board found that the evidence substantiated the other charges.

There is no conflict in the evidence, and, since the issue of whether there was just cause for dismissal has been passed upon by both the administrative board and the district court on appeal, this court, under the decisions herein cited, is not warranted in disturbing their findings. We are, therefore, constrained to hold that the proceedings resulting in petitioner's discharge were initiated upon proper notice, that she was afforded a fair hearing, and that upon the record considered as a whole the findings upon which her discharge was based were supported by substantial evidence.

Affirmed.