In the Matter of the Petition of INTERSTATE POWER COMPANY for Authority to Increase its Rates for Electric Service in Minnesota (Effect of Tax Reform Act of 1986 on Annual Revenue Requirements).

and

In the Matter of the Filing of INTERSTATE POWER COMPANY, GAS OPERATIONS, Pursuant to Minn.Rules, Parts 7827.0100 to 7827.0600, Relating to Rate Adjustments Due to the Tax Reform Act of 1986.

Nos. C7–87–1816, C9–87–1817.

Court of Appeals of Minnesota.

Feb. 23, 1988.

Hubert H. Humphrey, III, Atty. Gen., Gregory D. Dittrich, Karl W. Sonneman, Dennis Ahlers, Asst. Attys. Gen., St. Paul, for Minnesota Public Utilities Com'n and Residential Utilities Div. of the Office of Atty. Gen.

Hubert H. Humphrey, III, Atty. Gen., and Ann M. Seha, Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Public Service.

Heard, considered and decided by FORSBERG, P.J., and NORTON and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

In separate appeals to this court, Interstate Power Co. requested review of two Minnesota Public Utilities Commission orders which denied the inclusion of an accelerated tax as an expense item for ratemaking purposes. We consolidated the two appeals, and affirm.

## FACTS

Historically, utility companies had been allowed to defer recognition of approximately one-half month of income. Meters are read continuously throughout the month; bills are sent out on the same schedule, resulting in approximately one-half month's unbilled revenue as of the first of each month, despite the fact service has already been furnished. This amount has been termed "unbilled revenues."

The rate treatment to be accorded the incidence of the tax on these unbilled revenues provides the central dispute in this case. In the past, utility companies have paid taxes only on revenues actually billed as of the end of the year. The Internal Revenue Service did not require utilities to include, as taxable income, the amount of unbilled revenues owed by customers. This amounts, on average, to 15.2 days of income (the last half of December, on a calendar year basis), the recognition of which is deferred until the following calendar (and tax) year.

Clement F. Springer, Jr., William D. Carstedt, Leslie Recht, Defrees & Fiske, Chicago, Ill., and Ralph H. Peterson, Peterson, Chesterman, Erickson, Anderson & Hareid, Albert Lea, for Interstate Power Co.

The beneficial use of the revenue resulting from this tax deferral has never been reflected in the Minnesota Public Utilities Commission's (Commission) ratemaking analysis.

*The Tax Reform Act of 1986.*

The Tax Reform Act (TRA) § 451(f)[1] requires utilities to include, for tax purposes, end of the year unbilled income into its taxable income for the year in which the energy was actually furnished. To ameliorate effects of this accelerated recognition of income, TRA § 821(b) allows the utility to take this revenue into account ratably over a four-year period. Consequently, taxes on an average of 3.8 days (15.2 days divided by 4 years) of net income are required to be paid by the utilities in each year from 1987 through 1990.

Interstate Power Company (Interstate) argues this tax expense should be included in test year expenses as an offset against income when the Commission determines rates.

*Interstate's Rate Requests.*

In determining the size of a rate increase for a public utility, the Commission considers appropriate expenses, revenues, and investment for a twelve-month period, commonly referred to as a "test year." The matching of test year revenues with concurrent test year expenses is important in the ratemaking process; if these items are not appropriately balanced, the resulting rate is skewed.

Interstate filed two rate increase requests, both of which addressed the rate analysis to be afforded the test year treatment of unbilled income. Two such filings resulted in this consolidated appeal.

*Compliance Filing 86–384 (electric rates)*

This portion of this case began as a contested case hearing, before an Administrative Law Judge (ALJ), wherein Interstate sought an increase in rates. The case addressed many issues[2], including the rate

treatment the Commission would afford unbilled revenues.

In the contested hearing, Interstate argued unbilled revenues should not be included as an income item. The Department of Public Service (DPS) and Office of Attorney General (AG) argued they should be included. An AG witness recommended including the newly recognized unbilled income as an income item for ratemaking purposes. Interstate's rebuttal witness acknowledged the new tax law required bringing unbilled revenue into taxable income over a four-year period.

The ALJ recommended unbilled revenue be included in Interstate's calculation of income for purposes of calculating rates. The ALJ reasoned the "test year" concept required the tax expense also be included as an income item in setting rates, as it matched appropriate revenues with expenses. As the tax expense would be phased in over a four-year period, the ALJ concluded the unbilled income revenue item should be similarly phased in.

The Commission heard exceptions, replies, and oral argument with respect to the ALJ's conclusions and decision. The Commission then issued its May 1, 1987 order. The Commission declined to include a portion of the unbilled revenues in the test year rate calculation:

> [A]dding an additional amount of unbilled revenues without adjusting unbilled revenues included in the first month of the test year includes unbilled revenues from electricity consumed in the month prior to the test year. [We adhere to] the position on this issue adopted in previous cases. The Commission continues to find that the adjustment would result in an inappropriate mismatch because the test year would contain 365 days of cost but more than 365 days of revenue.

The Commission further determined the tax expense which arose as a result of the earlier recognition of unbilled income

---

1. Codified at 26 U.S.C. § 451(f) (1986).

2. This court recently released an opinion deciding several other issues regarding the determi-

nation of rates set as a result of this same proceeding. *See In re Interstate Power Co.,* 416 N.W.2d 800 (Minn.Ct.App.1987).

would also not be included when determining rates:

> Because the unbilled revenue adjustment * * * has been rejected, then logically the tax expense associated with unbilled revenues is not an appropriate tax adjustment.

The Commission set the rate of return on common equity at 12.43%.

The Commission also noted that Interstate testified it did not have the information necessary to perform accurate calculations as to the specific effect of the TRA when it had filed its testimony in the rate case. The Commission allowed Interstate to make necessary changes in test year data in the form of a compliance filing. The Commission directed Interstate to include a statement of the overall impact of the TRA on its revenue requirements.

Interstate made this compliance filing, which was followed by exceptions and arguments of the DPS and AG.

The Commission then issued its rate design order. It denied Interstate's proposed inclusion of the tax imposed by taxation of unbilled revenues as an expense item. It concluded that to include the tax as an expense without permitting the inclusion of revenue would improperly match more than 365 days of expenses with 365 days of revenue. As unbilled revenues were not to be included in income, the tax on those revenues should not be included in expenses. It reasoned:

> In determining just and reasonable rates, the Commission must give consideration to the cost of furnishing the utility service. The Commission finds that not all TRA changes result in increased cost of furnishing utility service. The Commission finds that the TRA will require the company to recognize and pay the tax on unbilled revenues earlier than under prior tax law. However, the tax on unbilled revenue is not a cost of providing service within the test year, but, rather, it represents tax based on revenues generated outside the test year.

The Commission also noted it had rejected proposals from two other utilities (in separate proceedings) to account for the tax on unbilled revenues through an increase in rate base.

Interstate filed a petition for a rehearing, which the Commission denied.

*Compliance Filing 87–380 (gas rates).*

This compliance filing was made pursuant to Minnesota Rules 7827.0100 to 7827.0600, which requires utilities to file reports quantifying the effect of the TRA on their revenue requirements. Again, the Commission refused to recognize, for ratemaking purposes, the tax imposed on unbilled revenues as an expense item. The Commission followed the same reasoning as in the earlier electric rate case.

## ISSUES

1. Was the decision of the Commission to deny inclusion of the tax on unbilled revenues in the test year for ratemaking purposes supported by substantial evidence in the record?

2. Was this decision made under lawful procedures?

3. Did the Commission correctly apply the provisions of the TRA?

4. Were the rates set reasonable and proper pursuant to Minn.Stat. § 216B.16, subd. 6 (1986)?

5. Does the exclusion of the tax expense result in a confiscatory rate of return?

## ANALYSIS

*Scope and Standard of Review.*

Agency decisions "enjoy a presumption of correctness, and deference should be shown by the courts to the agency's expertise and their special knowledge in the field of their technical training, education and experience." *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

■ The burden of proof rests with the public utility seeking the change to demonstrate that the rate change is just and reasonable. *In Re Northern States Power Co.,* 416 N.W.2d 719, 726 (Minn.1987) (No. C7–86–1482) (hereafter *NSP* ).

The standard of review to be applied by a reviewing court in an appeal of an agency decision depends on the type of decision-making process the agency engages in. As an administrative agency, the Commission may exercise two different functions: a quasi-judicial and a legislative function. *Id.* at 416 N.W.2d at 723. When the Commission engages in a quasi-judicial function, a reviewing court applies the "substantial evidence test." *Hibbing Taconite Co. v. Minnesota Pub. Serv. Comm'n.*, 302 N.W.2d 5, 9 (Minn.1980). When the Commission engages in a legislative function, it will be upheld unless the agency acted outside its statutory authority, or the utility shows (by clear and convincing evidence) that the decision was unjust, unreasonable, or discriminatory. *St. Paul Area Chamber of Commerce v. Minnesota Pub. Serv. Comm'n.*, 312 Minn. 250, 262, 251 N.W.2d 350, 358 (1977).

1. The Commission found the TRA requires Interstate to "pay the tax on unbilled revenue earlier than under prior law" and the TRA does not impose a "new" or "additional" cost of furnishing service for unbilled revenues. Interstate contends these findings are not supported by substantial evidence in the record.

In evaluating the validity of a rate increase application, the Commission applies the classic burden of proof analysis employed in civil cases in determining whether the utility has established the amount of a claimed cost as a judicial fact. *NSP,* 416 N.W.2d at 724. In this case, neither the amount of unbilled income nor the tax on that income is disputed.

Then, a reviewing court is to determine "whether the agency has adequately explained how it derived its conclusion and whether that conclusion is reasonable on the basis of the record." *Minnesota Power & Light Co. v. Minn. Pub. Utils. Comm'n.*, 342 N.W.2d 324, 330 (Minn. 1983). This determination by the Commission is both legislative and quasi-judicial. *NSP,* 416 N.W.2d at 724.

The Commission laid out its reasons for denying inclusion of the tax as an expense item in the test year:

a. Interstate's proposed inclusion of the tax expense item would result in an inappropriate matching of revenues and expenses in the test year, as the revenue which generated the tax was not being included in the revenue side of the balance sheets.

b. This decision is consistent with prior cases and holdings of the Commission.

c. The tax was not a "new" or "additional" expense; it was an accelerated recognition of income.

These reasons adequately explain the decision, and provide this court a sufficient record to review its reasonableness.

The supreme court gives direction for assessing reasonableness in *NSP.* The question before the Commission in a rate case is:

> whether the inclusion of the item generating the claimed cost is appropriate, or whether the ratepayers or the shareholders should sustain the burden generated by the claimed cost.

*Id.* at 727. The Commission must make this determination in light of its "statutory responsibility to enforce the state's public policy that retail consumers of utility services shall be furnished such services at reasonable cost." *Id.;* Minn.Stat. § 216B.16, subd. 4 (1986).

In *NSP,* the court went on to describe the "typical case" as one where the facts are essentially undisputed:

> In such case the [Commission] may draw its own inferences and arrive at its own conclusions from the undisputed basic facts.

*Id.* at 727.

It is clear the Commission has great latitude in making rate decisions. The Commission, faced with what is essentially a change in recognition of income for tax purposes chose not to include both the accelerated income and the accelerated tax on that income in its ratemaking decision. Given the deference to the Commission, we do not find the result complained of in this case unreasonable.

2. Interstate contends the Commission's findings regarding the tax not being "new" or "additional" were made upon unlawful procedure, in that no hearings were held upon Interstate's compliance filings.

Hearings were conducted in the electric rate case. Interstate chose not to present evidence at the initial contested case hearing on the issue of the inclusion of the tax as an expense item. The AG, at that same hearing, argued if the tax on unbilled income was not included into revenue it should not be taken into account for ratemaking purposes. Interstate was allowed an opportunity to present evidence on this issue, but chose not to. We hold this hearing provided sufficient opportunity for Interstate to present argument regarding any alleged disputed factual issues.

3. Interstate also contends the Commission did not understand the intent and the effect of the TRA, as evidenced by the Commission's finding the tax was not a "new" or "additional" tax, and the finding TRA forced Interstate to pay the tax on unbilled revenue earlier than under prior law.

There is no dispute between the parties regarding the effect of the TRA; both sides agree it requires Interstate to pay tax on income, the recognition of which was previously deferred. Interstate wishes to label this an "additional" tax. It is a tax which must be paid earlier than under prior law, but it is not a "new" tax in the sense Interstate was never before required to pay taxes on this income. There was no error in the Commission's interpretation of the TRA.

4. Minn.Stat. § 216B.16, subd. 6 requires the Commission:

> determine just and reasonable rates for public utilities, [giving due consideration to needs of the public] and to the need for the public utility for revenue sufficient to enable it to meet the cost of furnishing the service.

Corporate taxes are one of many items to consider when computing expenses in a ratemaking decision. *Hibbing Taconite Co. v. Minnesota Public Service Commission*, 302 N.W.2d 5, 10 (Minn.1980).

An agency's judgment concerning the inferences to be drawn from facts should not be rejected unless there is manifest injustice in the decision. *Gibson v. Civil Service Bd.*, 285 Minn. 123, 126, 171 N.W.2d 712, 715 (1969). Where an agency decision represents its judgment and not its will, the agency has not acted arbitrarily. *Markwardt v. State Water Resource Board*, 254 N.W.2d 371, 374 (Minn.1977).

Interstate argues the decision to not allow the taxes on unbilled revenue to be included in the cost of production contravenes the *Hibbing Taconite* reference to inclusion of the taxes in the cost of energy production.

This argument makes the assumption these costs are an additional cost of production, when they are actually an acceleration of a previously deferred tax on income. Also it ignores the fact this income has not been previously recognized for ratemaking purposes, and was not included as income for the year in question. The TRA accelerates the incidence of this tax; it does not create a new or additional tax. We find no manifest injustice in the Commission's decision.

5. Interstate contends, by not permitting Interstate recovery of those expenses so as to permit investors to earn the return upon equity which the Commission has set, the Commission has effected a confiscation or taking of Interstate's property without due process of law.

This argument ignores the fact the Commission set the rate of return at 12.43% *after* deciding it would not take both the unbilled income revenue and tax expense into account in the ratemaking test year. The Commission set its rate cognizant of the fact these items were not included in the test year calculations; the effective rate of return was set by the Commission with a view toward the impact of the Commission's decision to exclude those items from the test year. Investors will be allowed a return on equity in exactly the amount set by the Commission.

## DECISION

The Public Utility Commission's decision to deny inclusion of the claimed accelerated tax expense for ratemaking purposes was supported by substantial evidence in the record. The Commission acted under lawful procedures in making this determination, and correctly applied the Tax Reform Act of 1986. The rates set were reasonable.

Affirmed.