**DEPARTMENT OF HUMAN RIGHTS,** State of Minnesota, by Stephen W. Cooper, Commissioner, Dept. of Human Rights, Respondent,

v.

**Sharon SPITEN, Relator.**

No. CO–88–131.

Court of Appeals of Minnesota.

June 7, 1988.

Hubert H. Humphrey, III, Atty. Gen., Andrea Mitau Kircher, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Peter D. Plunkett, Austin, for relator.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and SCHULTZ, JJ.*

## OPINION

CRIPPEN, Judge.

This is an appeal from the Minnesota Department of Human Rights finding that relator Sharon Spiten engaged in an unfair discriminatory practice in violation of Minn. Stat. § 363.03, subd. 2(1)(a) (1986) by effectively refusing to rent to or withholding real property because of complainant Renee Larson's color and race. The administrative law judge awarded $3000 to Larson for mental anguish and suffering, $2600 in punitive damages and a $2000 civil penalty to the state. Relator appeals, contending (1) the decision and damage award was arbitrary and capricious and unsupported by the record; (2) the administrative judge erred in admitting transcripts of tape recorded telephone conversations between an agency investigator and relator; and (3) the judge erred in ruling that the commission does not have jurisdiction to decide relator's counterclaim.

## FACTS

This case arises from an attempt made by Renee Larson to rent a house from relator Sharon Spiten in Austin, Minnesota. It was not disputed that Larson was a minority person and the premises were available for rent. A hearing was conducted to determine (1) whether Larson was a qualified tenant and (2) whether Spiten rejected her application, and if so, whether the rejection was for good or pretextual reasons.

Larson testified that she was taken to see the house on October 1, 1986, by Linda Waterman, a realtor who was engaged by Spiten to sell or rent the house. Larson liked the house and wanted to rent the property at the asking price of $300 per month. She and Waterman returned to the realty office where Larson provided her with employment, credit, and other reference information. Waterman called Spiten to arrange a meeting between the parties so that Spiten could sign the lease which Waterman gave Larson.

After Larson left her office, Waterman checked Larson's credit references and found that a waste removal bill of approximately $50.00 had not been paid and that the Larsons voluntarily relinquished a car on which approximately $350 was still owing. Waterman telephoned Spiten with the credit information and also advised Spiten that Larson was black. Waterman told relator that she could not discriminate by not showing her home to Larson; to do so could result in the revocation of Waterman's real estate license. Spiten later

*Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

claimed that the credit information was a reason for denying rental. On the other hand, evidence indicated that Spiten sought no more credit information from Larson and specifically did not seek information on her income. Moreover, Spiten subsequently rented the home to a white man who was not required to supply such information.

Spiten also claimed she did not directly refuse to rent the property to Larson. The evidence indicates that Spiten failed to appear for a critical meeting. Larson testified that she went to meet Spiten at the appointed time and place with her husband and children. Don Bauers, Spiten's next door neighbor, confirmed that the Larsons appeared and that Spiten never showed up for the 4:00 p.m. meeting.

In addition, there was evidence that Spiten tried to scare away Larson. On October 2, 1986, relator called Larson and told her that a neighbor who shared a common driveway was a drinker and a violent man, and that the neighbor's son had murdered a young girl. Spiten also commented about Larson's bravery in remaining in the area when the P-9ers were on strike. Noting these unusual comments, Larson asked Spiten if she had a problem renting to her because she was black. Initially, Spiten didn't respond, then she said "Well, it's not me, it's the neighbors." Spiten later told a neighbor "that she was not going to rent to a nigger."

Spiten claims that if a prima facie case of discrimination was established, she demonstrated good reasons to turn down the prospective tenant. She points again to the credit reference issue, and also claims that respondent refused to rent the property. This was denied by respondent. Spiten also said on several occasions that her reason for refusal was the neighbors. There is no evidence her neighbors objected to minorities in the neighborhood; Spiten's next door neighbor testified to the contrary. Further, Spiten acknowledged to a department investigator that her decision was "mainly because [the Larsons] were black" which is consistent with her similar statement to her neighbor.

Following the hearing, the administrative law judge found in favor of Larson, ordering Spiten to pay her $3000 for mental anguish and $2600 for punitive damages, and $2000 to the State of Minnesota as a civil penalty. Relator Sharon Spiten appeals.

### ISSUES

1. Was the judge's decision arbitrary and capricious or unsupported by substantial evidence in view of the entire record?

2. Did the judge err in admitting transcripts of tape recorded conversations between an agency investigator and relator?

3. Did the judge err by ruling that he did not have jurisdiction to hear and decide relator's counterclaim?

### ANALYSIS

#### I.

The scope of judicial review of an administrative agency's decision is narrow and the reviewing court must not substitute its judgment for that of an agency. *Gibson v. Civil Service Board*, 285 Minn. 123, 126, 171 N.W.2d 712, 715 (1969). *See Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977) ("decisions of administrative agencies enjoy a presumption of correctness").

It is an unfair discriminatory practice (1) For an owner * * * or other person having the right to sell, rent or lease any real property, or any agent of any of these:

(a) to refuse to * * * rent or lease or otherwise deny to or withhold from any person or group of persons any real property because of race, color * * * *

Minn.Stat. § 363.03, subd. 2(1)(a) (1986). There are no Minnesota appellate cases construing these provisions of the Minnesota Human Rights Act. In the employment discrimination context, the Minnesota Supreme Court has stated that due to the substantial similarities in the language on purposes of the Human Rights Act and Title VII of the 1964 Civil Rights Act it would apply similar principles. *Danz v. Jones*, 263 N.W.2d 395, 398–99 (Minn.1978).

First, the Department of Human Rights must establish a prima facie case of discrimination. The elements of a prima facie case under the Civil Rights Act are as follows:

1. That [the charging party] is a member of a racial minority;
2. That [the charging party] applied for and was qualified to rent or purchase certain property or housing;
3. That [the charging party] was rejected; and
4. That the housing or rental property remained available thereafter.

*Selden Apartments v. United States Department of Housing & Urban Development*, 785 F.2d 152, 159 (6th Cir.1986) (citations omitted). Once the prima facie case is established, a presumption of discrimination arises and the burden shifts to the defendant to show the conduct was motivated by a legitimate nondiscriminatory reason. *Lamb v. Village of Bagley*, 310 N.W.2d 508, 510 (Minn.1981).

Relator concedes that Larson met the prima facie case for elements one and four. Larson is black and the property remained available thereafter. Further, with respect to the second element, there is no dispute that Larson applied for rental of the subject property. Relator argues that respondent fell short of establishing elements two and three. There was conflicting evidence on these two elements.

It was not error for the judge to find Larson was qualified to rent the property. Spiten never stated income requirements to Larson and never asked Larson about her income. Although there is evidence of a small outstanding bill and surrender of a vehicle without making an outstanding payment, these minor credit flaws in Larson's history do not make her unqualified for purposes of the Human Rights Act. Larson's net income was $900 without her husband's income and the rent was only $300. She was able to rent an apartment shortly after her experience with Mrs. Spiten for approximately the same amount and there is no evidence of her failure to pay. Further, the disparate treatment given a subsequent renter, a white male not subjected to the credit check, indicates that Larson met the requirement of qualification.

Relator also contends that the evidence does not support the conclusion that Larson was denied rental. Primarily, relator contends that she never unequivocally stated she would not rent to Larson. Nevertheless, Larson was refused rental through implication and Spiten's actions.

Upon hearing that Larson was black, Spiten telephoned her and told her that she would share a driveway with a neighbor who was violent and that the neighbor's son had "bludgeoned a woman to death." Spiten also commented on Larson's bravery in remaining in the area during the P–9 union strike. Despite Larson's impression that Spiten did not want to rent to her because she was black, she believed she could overcome Spiten's prejudice by meeting with her. The two agreed to meet at 4:00 p.m. October 2 as scheduled earlier by Waterman. There was conflicting testimony on who was present for the meeting at Spiten's home.

Larson testified that she went to meet Spiten at the appointed time and place with her husband and children, arriving at approximately 3:45 p.m. Don Bauers, the next door neighbor, testified that he was working in his garage with the door open that afternoon. He had an extended conversation with Steve Larson while the Larsons waited for Spiten. Bauers testified that Spiten never arrived for the 4:00 p.m. meeting and he did not recall her being there that afternoon at all. Renee Larson understood Spiten's failure to meet her at the home as a refusal to rent their home.

Spiten gave conflicting testimony regarding the events of the afternoon of October 2. First, she said that she went to the house to clean up and nobody came. Later Spiten said that Larson called earlier on October 2 to say she didn't want to rent the home and she "would have certainly showed up" for the afternoon meeting had she known Larson wanted to rent the home. She also stated in her August 11, 1987 deposition that she didn't go back to her house that day until the evening.

Relator's argument that she did not reject Larson's application lacks credibility. Her testimony that Larson called her rejecting the tenancy on October 2, 1986, was contradicted by Larson, and Larson's appearance at the home was confirmed by Don Bauers. Mr. Bauers testified that Larson and her family waited for over one hour for Spiten. The finding that Renee Larson was refused rental on the basis of her race is supported by the evidence.

Relator offered several rationales for her conduct, in the attempt to show that the refusal to rent was for a nondiscriminatory reason. First, she characterized her telephone comments about violent neighbors as an attempt to help Larson. Second, she claimed that Larson called her and said she no longer wanted the house. She also said that Larson's failure to give her sufficient credit references and landlord information was the reason for her refusal to rent to Larson. With regard to these, the judge found: "[Spiten] did not advance lawful, nondiscriminatory reasons for conduct," and "[Larson] proved by a preponderance of the evidence that the reasons advanced were merely pretext." These findings are based primarily on credibility and are supported by the evidence in the record.

■ Relator also alleges that the damages awarded "are totally out of proportion to the evidence." The judge awarded $3000 in mental anguish and suffering pursuant to Minn.Stat. § 363.071, subd. 2 (Supp.1987), $2600 in punitive damages pursuant to Minn.Stat. § 363.071, subd. 2 and § 549.20 (1986), and a $2000 civil penalty to the state pursuant to Minn.Stat. § 363.071, subd. 2 (Supp.1987). The damage award was supported by a detailed memorandum. The judge noted that Larson did not claim actual damage, but based the mental anguish and suffering award of $3000 on the fact that

> [Larson] revealed genuine pain resulting from the incident particularly with respect to the effect on her two children.
>
> \* \* \* \* \* \*

It is appropriate to recognize that at least three individuals have been directly harmed by Mrs. Spiten's behavior. Con-

sequently it has been determined that Ms. Larson receive $1000.00 for the pain that she and each of her two children has experienced. The subjective, potentially longlasting effect of this discrimination causes this decision to be difficult particularly with respect to the amount of damages to be awarded. \* \* \* In any event, three thousand dollars is but token recognition of what has occurred.

The award is within the judge's discretion and meets the requirements of the statute.

Relator also argues that the administrative judge failed to consider all of the statutory factors in its $2600 punitive damage award to Larson. The applicable statute states that punitive damages shall be awarded pursuant to Minn.Stat. § 549.20 (1986). The trial court noted that relator has adequate resources to pay. The punitive damage award was reasonable in light of Spiten's behavior and resources. The court also noted Spiten's "unwillingness to participate in conciliation and the illogical excuses provided" in her defense of the discrimination claim. Further, the nature of relator's defense ratifies the judge's decision to award punitive damages. It is evident in the handling of the litigation that relator premised her defense in part on questions regarding the legitimacy of the discrimination laws. In a deposition of Larson taken by relator's attorney, he asked her the following questions, among others:

> "You think that you're going to do something to promote race relations by bringing this action?"
>
> "You don't give any credit to the people north of the Mason Dixon for freeing the slaves?"
>
> "You don't know how many thousands and hundreds of thousands of boys north, living north of the Mason Dixon, and including Minnesota, that were killed in the south trying to free the slaves?"
>
> "Are you trying to do away with discrimination by suing a Scandinavian girl who \* \* \*"

With regard to the $2000 civil penalty, the applicable statute states:

[t]he Administrative law judge shall determine the amount of the civil penalty to be paid, taking into account the seriousness and extent of the violation, the public harm occasioned by the violation, whether the violation was intentional, and the financial resources of the respondent.

Minn.Stat. § 363.071, subd. 2 (Supp.1987). In the balancing of factors required by the statute, the judge noted that because Spiten does not routinely rent or sell real estate, the "extent of potential public harm which exists from discrimination in housing is minimal." The judge stated, however, there is "little doubt" that Spiten intentionally discriminated against Larson because of her race and that $2000 is a small amount to assess as a civil penalty. Given the circumstances of this case, the $2000 civil penalty is within the discretion of the administrative law judge.

## II.

■ Relator contends that the transcript of a tape recorded telephone conversation between Spiten and Department investigator Rebecca Gaspard should not have been admitted in the agency hearings. The same argument is made with respect to a transcript of Gaspard's conversation with Waterman. Relator's theory is that "it does not seem fair to allow the State of Minnesota to tape statements from an individual who allegedly violates the Minnesota Human Rights Act" without her prior consent.

Minn.Stat. § 626A (1986) makes interception of wire or oral communications illegal under certain circumstances. "Intercept" is defined as "aural acquisition * * * through the use of any electronic, mechanical, or other device." Minn.Stat. § 626A.01, subd. 5 (1986). "Electronic, mechanical or other device" is defined to exclude devices designed to record "conversations to which the operator of the device is a party." Minn.Stat. § 626A.01, subd. 6(c) (1986). For this reason, the facts in this case do not constitute an "interception" under Minnesota law. *See Rathbun v. United States*, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957) (interception requires an unauthorized third party listener).

Minnesota law also provides that it is not a violation of Minn.Stat. § 626A for a "person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication." Minn.Stat. § 626A.02, subd. 2(c) (1986). Gaspard was acting under color of law when she taped her conversations with Spiten and Waterman. Given the other evidence which supports the judge's findings, it was not error to admit the transcripts into evidence. Even without the transcripts, it is evident that Spiten lacked credibility and the transcripts did little more than solidifying these conclusions.

## III.

■ Relator argues that the administrative law judge erred in dismissing the counterclaim and cross-claim for lack of subject matter jurisdiction because it should have allowed relator to assert her privacy cause of action pursuant to Minn.R.Civ.P. 13.06. Relator claimed that respondent and their investigators electronically taped conversations of the parties and witnesses involved in the case in violation of Minn.Stat. § 626A.02 (1986).

It was not an abuse of discretion for the judge to refuse to hear relator's counterclaim. Relator's tort claims were not within the subject matter jurisdiction of the administrative law judge, as jurisdiction is limited to that set forth in the Human Rights Act. Further, it is not evident that relator made out a prima facie case of invasion of privacy or that the department's "negligence" is an actionable claim.

## DECISION

We affirm the administrative law judge's finding that relator engaged in an unfair discriminatory practice in violation of Minn. Stat. § 363.03, subd. 2(1)(a) by refusing to rent to Larson because of Larson's color and race. The awards of $3000 for mental anguish, $2600 in punitive damages and $2000 in civil penalties are not unreasonable or contrary to the evidence. It was not error for the judge to admit transcripts

of tape recorded conversations between an enforcement officer of the Minnesota Department of Human Rights and relator. Relator's counterclaim for an alleged violation of the Privacy of Communications Act was not within the jurisdiction of the tribunal.

Affirmed.