**STATE of Minnesota, by Stephen W. COOPER, Commissioner, Department of Human Rights, Respondent,**

v.

**MOWER COUNTY SOCIAL SERVICES, Relator.**

No. C5–88–1601.

Court of Appeals of Minnesota.

Jan. 17, 1989.

See also, 428 N.W.2d 491.

Hubert H. Humphrey, III, Atty. Gen., Carl M. Warren, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Scott M. Lepak, Steffen & Munstenteiger, P.A., Anoka, for relator.

Dept. of Human Rights, St. Paul, Observer.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and FLEMING *, JJ.

## OPINION

FLEMING, Judge.

The administrative law judge found the county discriminated against a job applicant because the applicant was pregnant and unmarried. The county appeals the findings of discrimination and the damages

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. VI, § 2.

awarded for mental anguish and suffering. The respondent appeals the denial of its request for prejudgment interest. We affirm.

## FACTS

Doris Hoy worked as a temporary clerical employee for Mower County Social Services Department (county) during the summer of 1983. She also worked as a temporary Clerk Typist I for the county in September 1983 and from August 30, 1984 to December 7, 1984. In mid-October 1983, the county's director of social services, Robert Schulz, wrote a letter to Hoy in which he expressed appreciation for Hoy's work and told Hoy she was an "excellent worker." In January 1984 Hoy's supervisor, Audrey Hallum, wrote a letter of reference for Hoy which indicated Hoy had "potential to be a very qualified confidential clerical worker * * * especially in the area of social service programs."

Hoy told Hallum and Schulz she wanted to apply for a vacant Clerk Typist I position. In mid-November 1984, Hoy found out she was pregnant. After Hoy informed Hallum about the pregnancy, Hallum allegedly stated: "You're not married are you?" Hoy responded that she was not married and said she was living with her boyfriend. Hoy testified that she and Hallum had been on a "friendly basis," but that Hallum's demeanor toward her changed after she revealed her pregnancy. Schulz told Hoy her pregnancy would not affect her chances of being hired and indicated it was illegal discrimination to consider pregnancy.

The Minnesota Merit System sent Schulz a list of seven certified candidates eligible for the Clerk Typist I position. Hoy was ranked at the top of the list because she achieved the highest overall test score. Schulz and Hallum interviewed the seven candidates as well as an individual named Monica Grimm who also was eligible for the position because of her prior experience. Grimm had 13 years of clerical experience, worked in a social services department in Iowa for three years, and was qualified to use several types of office equipment. Grimm was hired for the Clerk Typist I position in January 1985.

Hoy was surprised when she was not offered the job because she received only favorable comments when she worked for the county and was told she was qualified for the job. Hoy continued to seek employment with the county after her rejection and was included in the lists of certified candidates for six permanent Clerk Typist I positions filled by the county from the time of Hoy's rejection in January 1985 to the date of the contested hearing. Hoy was either the highest ranked candidate or near the top in those listings. Hoy also applied for employment elsewhere after her rejection in January 1985. According to Hoy, a prospective employer told Hoy she was not hired in part because the county would not give the employer a reference for Hoy.

Hoy filed a charge of discrimination with the Department of Human Rights in March 1985. Hoy was unemployed in July 1985 when her child was born and applied for medical assistance from the county. Hoy's application was processed and serviced by the county employees with whom Hoy previously had worked. The Department of Human rights issued a complaint in December 1987.

Six county employees testified at the contested case hearing. Each of the six employees testified that Hoy performed her duties well; four of the six employees testified that Hallum commented about Hoy's pregnancy, marital status or living arrangements when Hallum was asked about Hoy and the possibility of hiring Hoy to fill the vacant Clerk Typist I position. None of the four employees ever heard Schulz make any comments about Hoy's marital status or pregnancy or whether Hoy's personal circumstances affected her chances of being hired as a permanent employee.

Hallum testified that Hoy satisfactorily performed her duties as a temporary clerk typist and had presented herself well during the interview. Hallum said she probably did not know Hoy was living with her boyfriend until Hoy told her about the pregnancy and stated she could not recall making any statements about Hoy's marital status or living arrangements, but may

have responded to other employees' specific questions. Hallum said she did not make any statements to Schulz about Hoy's pregnancy or marital status either during the interviewing process or during subsequent discussions about the job applicants. Hallum testified that both she and Schulz agreed Grimm was the best candidate for the clerk typist position.

Schulz testified that Grimm was hired because of her prior extensive experience. Schulz acknowledged he talked to Hallum about Hoy's pregnancy or that Hallum had brought it to his attention. However, he testified that he did not consider Hoy's pregnancy and marital status and that neither factor was mentioned during discussions with Hallum about the applicants' merits. Schulz retained ultimate authority for all hiring decisions, but acknowledged he sought out Hallum's input in deciding to hire Grimm because Hallum would supervise the person hired to fill the vacant clerical position.

The administrative law judge found that the county discriminated against Hoy because of her pregnancy and marital status. The judge concluded Hoy's case had been proved by a preponderance of the evidence and "that the legitimate, nondiscriminatory reason for hiring Monica Grimm proffered by the [county] is only a pretext for discrimination." The court also found Hoy suffered mental anguish as a result of the rejection because the rejection caused Hoy to become "frustrated, angry and depressed," and "dashed her hope of providing added income to her family and her dream of eventually being able to send her children to college." The judge also found Hoy's experience in having to ask her former co-workers for welfare was "degrading."

The administrative law judge concluded Hoy was entitled to compensatory damages of $33,914.51 in backpay, plus $1,612.00 for medical expenses which would have been paid by insurance had Hoy been hired. The judge also concluded Hoy was entitled to $2,000 in damages for mental anguish and suffering, and $2,000 in punitive damages. The judge ordered the county to pay the state $1,000 as a civil penalty. The county also was ordered to hire Hoy immediately as a Clerk Typist I and award her retroactive seniority and benefits.

On motion for reconsideration, the administrative law judge concluded Hoy also was entitled to compensatory damages from the date of the hearing through the date of her employment by the county. The judge declined to award Hoy prejudgment interest.

By writ of certiorari the county appeals the finding of discrimination and the award for mental anguish and suffering. Hoy appeals the denial of prejudgment interest.

## ISSUES

1. Are the administrative law judge's findings about discrimination supported by substantial evidence in the record?

2. Did the administrative law judge abuse its discretion by awarding damages for mental anguish and suffering?

3. Did the administrative law judge abuse its discretion by declining to award prejudgment interest?

## ANALYSIS

The administrative law judge's decision will be reversed if the findings, inferences, conclusions or decision are arbitrary or capricious, affected by errors of law, or unsupported by substantial evidence in the record. *See* Minn.Stat. § 14.69 (1986).

Resolving conflicts in testimony and determining the weight accorded testimony and the inferences to be drawn are part of the fact finding process. *See State ex rel. McCarthy v. Civil Service Commission of Minneapolis,* 277 Minn. 358, 361, 152 N.W. 2d 462, 464 (1967). A reviewing court cannot "substitute its judgment concerning facts and inferences to be drawn therefrom." *Id.* A reviewing court's "only function * * * is to determine whether there is substantial evidence, considering the record as a whole, to sustain the findings of fact." *Id.*

1. *Discrimination*

It is an unfair employment practice for an employer "to discriminate against a person with respect to hiring" or "to refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment" because of marital status or pregnancy. *See* Minn.Stat. §§ 363.03, subd. 1, 363.01, subd. 29 (1986 and Supp.1987).

Minnesota courts analyzing disparate treatment claims under the Minnesota Human Rights Act must apply a three-part analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn.1986). The complainant must establish a prima facie case of discrimination, the employer must answer that showing, and the complainant must rebut the employer's evidence of nondiscrimination. *See Sigurdson,* 386 N.W.2d at 720; *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

The administrative law judge correctly applied the *McDonnell Douglas* analysis. The judge found Hoy established a prima facie case of disparate treatment because Hoy showed (1) she was a member of a protected class; (2) she applied for employment and met the minimum qualifications of the job; (3) she was denied employment despite her qualifications; and (4) after she was rejected, the County continued to seek applicants for clerk typist I positions who had similar qualifications. *See Khalifa v. Hennepin County,* 420 N.W.2d 634, 640 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. May 4, 1988).

There is no dispute that Hoy was unmarried and pregnant when her application for the Clerk Typist I position was rejected. There also is no dispute that Hoy possessed the minimum qualifications for the job and was denied employment despite her qualifications. *See Khalifa,* 420 N.W.2d at 640 (to establish a prima facie case the applicant need only show the applicant "met the minimum objective qualifications for the job"). Although the person hired in January 1985 to fill the initial Clerk Typist I position had more years of experience, typed faster, and could operate at least one office machine for which Hoy had no experience, the county concedes the Clerk Typist I position is an entry-level position which does not require prior experience.

The county claimed it hired Grimm rather than Hoy because of Grimm's superior qualifications and asserted Hoy's rejection was not based on discriminatory motives. The administrative law judge rejected that assertion and concluded Hoy proved, "by a preponderance of the evidence, that the nondiscriminatory reasons for hiring Grimm were only a pretext for discrimination." The judge noted that Hoy was ranked number one of the seven applicants certified by the merit system, had successfully worked in the department for approximately nine months, and was familiar with all aspects of the Clerk Typist I job for which she applied. Although the county did not act improperly in considering Grimm even though she was not included on the list of certified applicants, the judge noted that the county had no idea how Grimm worked with other employees because the county had never observed Grimm in a working situation. The judge also concluded Hallum's comments about Hoy's pregnancy and marital status indicated Grimm's hiring was a pretext for discrimination.

The judge's conclusions and findings are supported by the evidence in the record. Although Hallum testified she did not make any improper comments about Hoy and stated Hoy's personal circumstances did not affect the county's hiring decision, four county employees testified that Hallum made improper comments about Hoy's marital status and pregnancy. According to those witnesses, Hallum indicated by her comments that she believed Hoy was a person the county should not hire. There is no dispute that Schulz ultimately was responsible for making hiring decisions and there is no indication that Schulz improperly commented about Hoy's marital status and pregnancy to county employees. However, the record shows Hallum participated in the hiring process by interviewing appli-

cants and by discussing the applicants' relative merits with Schulz. The record also indicates Schulz sought out and relied on Hallum's recommendations with respect to the hiring decision because Hallum was familiar with the duties of clerk typists and was responsible for supervising the employees in her department.

> Employment discrimination cases often involve intricate factual issues in which only the trial court, with its opportunity to observe the witnesses firsthand, can meaningfully assess the weight and credibility of the evidence. We have traditionally accorded great deference to the trial court in making findings of fact, recognizing that much must necessarily be left to its sound judgment and discretion because it has the advantage of fully hearing the testimony and acquiring a thorough familiarity with all the circumstances of the case. An appellate court cannot judge the credibility of a witness or the weight, if any, to be given to testimony.

*Sigurdson,* 386 N.W.2d at 721 (citations omitted).

The administrative law judge's conclusion that Grimm's hiring was a pretext for discrimination also is supported by evidence of the county's subsequent conduct. At least five Clerk Typist I positions were filled after Grimm was hired in January 1985. Although Hoy remained qualified for those positions and was at or near the top of the lists of certified applicants, Hoy was rejected for each of those positions. One applicant did not indicate any relevant work experience on her application for the merit system test but was hired by the county. *Cf. Sigurdson,* 386 N.W.2d at 720 (the plaintiff's prima facie case included a showing that "after plaintiff was denied, the opportunities remained available or were given to other persons with plaintiff's qualifications").

The judge's findings and conclusions must be affirmed because they are supported by substantial evidence in the record which shows the county did not hire Hoy because she was unmarried and because she was pregnant. *See Dakota County Abstract Co. v. Richardson,* 312 Minn. 353, 356, 252 N.W.2d 124, 126–27 (1977) (the reviewing court "must not substitute its view of the evidence for that adopted by the hearing examiner if the record supports the hearing examiner's determination").

### 2. *Mental Anguish and Suffering*

In all cases where the administrative law judge finds that the respondent has engaged in an unfair discriminatory practice the administrative law judge shall order the respondent to pay an aggrieved party, who has suffered discrimination, compensatory damages in an amount up to three times the actual damages sustained. In all cases, the administrative law judge may also order the respondent to pay an aggrieved party, who has suffered discrimination, damages for mental anguish or suffering and reasonable attorney's fees * * *.

Minn.Stat. § 363.071, subd. 2 (Supp.1987).

The administrative law judge's $2,000 award for mental anguish and suffering was based on findings "showing the turmoil experienced by Ms. Hoy after her rejection for employment." According to the judge, Hoy became "frustrated, angry and depressed" because of the rejection. The judge also found the rejection aggravated Hoy's relationship with her husband and others and that her "experience in having to ask her former co-workers for welfare was degrading." The county asserts the evidence is insufficient to show compensable mental anguish and suffering, and claims damages for mental anguish can be awarded only if the distress is severe and caused by egregious circumstances as suggested in *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 439 (Minn.1983). We disagree.

In *Hubbard,* the supreme court concluded the plaintiff could not recover damages for mental distress because the plaintiff's distress was not sufficiently severe or caused by "particularly egregious facts." *See id.* at 439–40. *Hubbard* is distinguishable on two grounds. First, the plaintiff in *Hubbard* asserted an independent tort claim for intentional infliction of emotional

distress in addition to his employment discrimination claims. The claim for mental anguish in Hoy's case is based on statutory law rather than common law. Second, at the time of the *Hubbard* suit, the Human Rights Act did not allow damages for mental anguish or suffering. *See* Minn.Stat. § 363.071, subd. 2 (1980).

In *State v. Porter Farms, Inc.*, 382 N.W. 2d 543 (Minn.Ct.App.1986), this court affirmed a $500 award for mental anguish because it concluded "[t]he findings regarding mental anguish are there and support the award" and because "[s]ubstantial evidence supports the finding." *See id.* at 551. Our *Porter Farms* opinion did not state any "particularly egregious facts" or indicate that the employee suffered unusually "severe" mental distress. In *Department of Human Rights v. Spiten*, 424 N.W.2d 815 (Minn.Ct.App.1988), a property owner violated the Human Rights Act by refusing to rent residential property to a woman and her family because of their race. This court affirmed the $3,000 award for mental anguish and suffering because the complainant "revealed genuine pain resulting from the incident particularly with respect to the effect on her two children." *See id.* at 819. Although the administrative law judge in *Spiten* indicated the discrimination probably would cause long-term effects, the reported decision by this court did not indicate that the facts were "particularly egregious" or that the complainant's mental anguish was unusually "severe."

The administrative law judge did not abuse his discretion by awarding Hoy damages for mental anguish and suffering because the Human Rights Act expressly authorizes "damages for mental anguish or suffering" and because substantial evidence in the record shows there were sufficiently compelling circumstances to justify the award. We note, for instance, that Hoy was awarded $2,000 in punitive damages. Punitive damages may be awarded under the Human Rights Act only pursuant to section 549.20. *See* Minn.Stat. § 549.20, subd. 1 (1986) (punitive damages shall be allowed "only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others"); *see also id.* § 549.20, subd. 3 (awards of punitive damages shall be measured by several factors including "the duration of the misconduct and any concealment of it" and "the attitude and conduct of the defendant upon discovery of the misconduct"). Since the administrative law judge concluded the county exhibited "a willful indifference to the rights of the Charging Party," we believe the county's conduct was sufficiently severe to also cause Hoy compensable mental anguish and suffering. *See* Minn.Stat. § 363.11 (1986) ("The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof."); *see also Porter Farms*, 382 N.W.2d at 550 (damage awards are within the administrative law judge's sound discretion).

### 3. *Prejudgment Interest*

■ Hoy argues the administrative law judge abused his discretion by declining to award her prejudgment interest on her compensatory damage award. The Human Rights Act does not expressly allow prejudgment interest awards. *Cf. County of Ramsey v. Neujahr*, 409 N.W.2d 53, 56 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Sept. 18, 1987) (section 549.09 did not apply to an award granted by the civil service commission because there was no "judgment").

In *Henry v. Metropolitan Waste Control Commission*, 401 N.W.2d 401 (Minn. Ct.App.1987), a discharged employee asserted claims under the Veterans Preference Act and was awarded backpay; the administrative law judge's recommendation provided for interest under section 549.09. On appeal this court stated:

> Minn.Stat. § 549.09 does not apply to administrative proceedings. The statute contains no references to the Administrative Procedures Act (APA), nor does the APA provide for interest awards under Minn.Stat. § 549.09.

*Id.* at 407. However, this court concluded the employee was entitled to interest on his back pay calculated under chapter 334 which allows six percent interest on "any

legal indebtedness * * * unless a different rate is contracted for in writing." *See* Minn.Stat. § 334.01, subd. 1 (1986). This court noted that even though the Veterans Preference Act was silent on the question of interest, "the supreme court has indicated an intent that interest be awarded by governmental units for funds improperly held." *See Henry*, 401 N.W.2d at 407.

There is some precedent for interest awards in a discrimination suit under the Minnesota Human Rights Act. *See, e.g., Lamb v. Village of Bagley*, 310 N.W.2d 508, 512 (Minn.1981) (the employer was ordered to pay compensatory damages and equitable relief "plus interest"). However, the administrative law judge did not award Hoy prejudgment interest in part because "a substantial award of compensatory damages had already been made" to Hoy. We cannot conclude the judge abused his discretion by declining to award prejudgment interest in this case. *See Porter Farms*, 382 N.W.2d at 550 (damage awards are within the administrative law judge's sound discretion).

## DECISION

The administrative law judge's conclusion that the county did not hire Hoy because Hoy was unmarried and pregnant is supported by substantial evidence in the record. The award for mental anguish and suffering is supported by substantial evidence in the record. The administrative law judge did not abuse his discretion by declining to award prejudgment interest.

AFFIRMED.