## STATE EX REL. WILLIAM W. SAARI v. STATE CIVIL SERVICE BOARD.

122 N. W. (2d) 174.

May 29, 1963—No. 38,763.

*Carl A. Jensen,* for appellant.

*Walter F. Mondale,* Attorney General, and *Frank J. Murray,* Deputy Attorney General, for respondent.

MURPHY, JUSTICE.

This case is before us on appeal from an order of the District Court of Ramsey County affirming a decision of the Civil Service Board of the State of Minnesota in proceedings to dismiss an employee of the Department of Conservation. The employee, William W. Saari, was charged with having misappropriated state funds and with failure to cooperate with the State Public Examiner. The Civil Service Board found that the evidence taken at the hearing sustained the charges.

The appellant contends that the record fails to support the charge that he did not cooperate with the public examiner; that it fails to support a finding of misappropriation of funds or false reports of funds received; that certain errors occurred in the admission of evidence during the hearing; and that the action of the board was unreasonable and contrary to law. The authority relied upon by appellant is State v. Nolan, 231 Minn. 522, 44 N. W. (2d) 66, and 3 Dunnell, Dig. (3 ed.) § 1402.

It appears from the record that in May 1961 the Department of Conservation gave to the appellant written statements by which he was notified that he was charged with misappropriation of public funds in failing to account to the State of Minnesota for money received from the sale of venison.[1]

After certain preliminary interviews and investigations, in which the appellant participated, he was notified by the commissioner of conservation on June 16, 1961, that he was "discharged from state service effective immediately for reasons of misappropriation of state funds and fail-

---

[1]The proceedings to discharge the appellant were instituted under Minn. St. 43.24, subd. 1, which provides: "No permanent employee in the classified service, under the provisions of this chapter or the rules made pursuant thereto, shall be removed, discharged, suspended without pay for more than 30 days, or reduced in pay or position, except for just cause, which shall not be religious or political. In case of any disciplinary action, as enumerated in this section, the employee shall, before the action is taken, be furnished with a statement, in writing, setting forth the reasons for the disciplinary action, be permitted five days time to reply thereto, in writing, or upon his request, to appear personally and reply to the head of the department. A copy of the statement and the employee's reply, if any, shall be filed with the director of civil service prior to the effective date thereof."

ing to account to the State of Minnesota for money received from the sale of venison owned by the state," and also for failure to cooperate with the public examiner. Appellant appealed to the Civil Service Board pursuant to Minn. St. 43.24, subd. 2, which provides in part:

"Any permanent employee who is removed, discharged, suspended without pay for more than 30 days in any one year, or reduced in pay or position may appeal to the board within 30 days after such action is taken. Upon such appeal, both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard publicly and to present evidence."

After a full hearing before the board, which included testimony of the appellant and other members of the Department of Conservation, the board rendered its findings. In recommendations accompanying its findings, the board stated:

"While the Board finds that the employee was guilty of misappropriation of state funds, there was no specific evidence that the employee used state funds for his own enrichment. He was careless in the handling of the monies in his possession belonging to the state, and he was guilty of commingling state funds with personal funds. He was guilty of false reporting as to funds received according to the evidence and testimony."

■ In reviewing the record to determine whether it contains evidence which reasonably tends to establish just cause for the appellant's dismissal, it must be kept in mind that the scope of our review is narrowly limited. In our recent decision of Vicker v. Starkey, 265 Minn. 464, 122 N. W. (2d) 169, we restated the well-established principle that an appellate court will not disturb an administrative agency's determination because it does not agree with it and that it can only interfere where it appears that the agency has not kept within its jurisdiction, that it has proceeded upon an erroneous theory of law, or that its actions are arbitrary and unreasonable or without adequate support in the record.[2]

■ It appears from the record that the appellant was classified under

---

[2]See, also, State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. (2d) 574.

civil service as a game warden in the Game and Fish Division of the Department of Conservation. At the time of his alleged misconduct, he was assigned to a southern Minnesota area, having headquarters at Sleepy Eye. His general duties brought him into contact with most phases of the state conservation program. His primary responsibilities, however, had to do with effecting compliance with wildlife laws and regulations promulgated by the department. In connection with these responsibilities he was required to make a daily report of his activities. In addition to the daily report he was required to submit a monthly mortality report bearing on the deer population of his area, including a record of the disposition of carcasses of deer killed accidentally or shot out of season. The purpose of the latter was to furnish information for use of the Bureau of Research and Planning to assist in keeping a record of the deer population. He was also required to submit current confiscation reports, presumably for the purpose of giving information on the disposition of articles or animals confiscated and for the further purpose of remitting to the state the proceeds, if any, from the sale of carcasses.

The material evidence in the record covers a period from 1958 to May 1961. It appears that during this period the appellant had disposed of carcasses of 18 deer. The reports submitted by him, however, reported only 13, 7 of which are referred to in the mortality reports and 6 in the confiscation reports. It also appears that the appellant received from the sale of the deer carcasses the sum of $95.14 but that he actually reported and remitted to the state the sum of $34. Moreover, the record would indicate that in connection with the proceeds from the sale of carcasses which were actually reported by the appellant, certain irregularities existed. For instance, in November 1959, the appellant sold the carcass of a deer killed in an automobile accident to purchasers in Minneapolis for the sum of $25. He received a check by mail from the purchasers payable to the state treasurer for the purchase price. However, he returned the check with instructions that it be made out to him personally. He then cashed the check and after deducting the sum of $5, purportedly to defray expense in connection with the transaction, he remitted the balance to the state. This transaction was contrary to written instructions from the commissioner issued July 1, 1957, which recite:

"Monies received through sale of confiscated game or fish will continue to be submitted with the confiscation report. The money received shall be submitted as soon as the transaction has been completed. Purchasers of confiscated game and fish should make purchases by check made payable to the State Treasurer. Accepting cash should be avoided whenever possible."

The commissioner points out that this transaction was characteristic of practices followed by the appellant and contrary to established procedures. It also appears from the record that the appellant, contrary to instructions, paid various unverified expenses including informer fees, locker plant fees, and equipment purchases, including a lantern and flashlight.

In answer to the charges of the state that he failed to turn over to the state all money received by him, the appellant claims he incurred and paid various expenses in connection with his work. According to a statement appended to his brief and used at the hearing before the board, although not placed in evidence before it, he had received from the sale of deer carcasses between October 31, 1960, and May 23, 1961, the sum of $69.14 and had disbursed in payment of expenses and by remittances to the State of Minnesota the sum of $81.04, leaving a balance owing to him of $11.90.

We shall not attempt to reconcile the accounting aspects of the various transactions as they appear in the record. It is sufficient to note that the record fairly establishes that the appellant insisted on doing things in his own way without regard to instructions and procedures which were prescribed for making reports and handling of public money. Obviously, the Department of Conservation must have accurate and reliable information in carrying out the purposes of the agency. It must rely upon its people in the field for this information. Moreover, it is important that procedures with reference to the accounting of public money be followed. It appears from an examination of the incomplete and unsatisfactory reports submitted by the appellant that the commissioner could not rely upon them and that the appellant was either incapable of performing the paper work required in connection with his duties or unwilling to do so. Although we agree that the evidence does not estab-

lish that the appellant intended to appropriate state money for his own enrichment, it was nevertheless sufficient to show that his persistent course of conduct in the performance of his work was detrimental to the best interests of the department. While it is true that the mechanics involved in the handling and sale of deer carcasses presented some difficulties to the appellant, it is also true that he had the benefit of explanations received at meetings and training sessions relating to the details of his work. The appellant points to his 34 years of service and argues that if he is, in fact, unqualified for his work, he should have been discharged long ago. Even if we might agree that there is merit in the appellant's claim, it is not for this court to pass upon disputed facts and try the merits of a matter which the legislature has delegated to an administrative tribunal nor to attempt to control the discretion of officials who seek the removal of an employee. Where the prescribed procedure is followed and no constitutional right is denied, the action of an administrative board is not subject to revision in the courts.[3] The commissioner and the Civil Service Board are in a better position than are we to appraise the seriousness of the breach of duty which the record undoubtedly establishes. This being the case, we cannot say that just cause for dismissal does not exist or that the action taken below is arbitrary, oppressive, or unreasonable in light of the particular facts of the case.

While the Civil Service Board made no recommendation for or against reinstatement of the appellant, it did say in its memorandum:

"The Board points out that in cases of this kind where there is no finding of political, racial or religious reasons for dismissal and the Board finds that there is reasonable ground for institution of dismissal proceedings, the final determination is made by the appointing authority rather than the Board, and it is within the power of the appointing authority, within thirty days after the receipt of these Findings and Recommendations, to reinstate the employee with or without pay for the period of suspension or otherwise modify its original decision of discharge."

The order is accordingly affirmed and remanded for such further ac-

---

[3]State ex rel. Nelson v. Henry, 221 Wis. 127, 266 N. W. 227.

tion as the commissioner may, in his discretion, wish to take in light of the views expressed by the Civil Service Board.

Affirmed and remanded.