## KORONIS MANOR NURSING HOME v. DEPARTMENT OF PUBLIC WELFARE.

249 N. W. 2d 448.

December 30, 1976—No. 46565.

*Frauenshuh & Fahlberg* and *Ronald R. Frauenshuh, Sr.,* for appellant.

*Warren Spannaus,* Attorney General, and *Thomas L. Fabel,* Deputy Attorney General, for respondent.

Heard before Kelly, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

This appeal follows a determination of the trial court affirming an order of the commissioner of public welfare which dealt with the calculation of reimbursement rates for welfare patients in nursing homes. We affirm the trial court's decision.

Appellant, Koronis Manor Nursing Home (Koronis), is a skilled nursing care facility owned and operated by the city of Paynesville. The nursing home is adjacent to and operated in conjunction with the Paynesville Community Hospital (Hospital). As a consequence, Koronis shares certain costs with the Hospital, including laundry, housekeeping, and plant operation expenses.

These jointly operated health care facilities voluntarily participate in the two major government sponsored, health care programs, Medicare[1] and Medicaid,[2] and willingly accept patients whose care is partially or totally funded by one of these programs.

One of the rate setting problems addressed by both the Department of Health, Education, and Welfare (HEW) for Medicare patients and by the Department of Public Welfare (DPW) for Medicaid patients is the apportionment of allowable costs between two facilities which share certain expenses but which are independent for purposes of rate determination. See, 20 CFR

---

[1] Medicare is the federal health insurance program, administered by the Department of Health, Education, and Welfare and governed by Title XVIII of the Social Security Act and its implementing regulations. The program provides hospital or nursing home benefits for a limited period of time and is primarily a resource for short term patients. HEW establishes cost-related rates for all hospitals which participate in Medicare and reimburses the facilities at the established rate for each eligible patient. See, 20 CFR § 405.401 et seq.

[2] Medicaid is the joint federal-state welfare program for medical care and is administered by the Department of Public Welfare and the county welfare departments. It is governed by Title XIX of the Social Security Act and implementing federal regulations as well as by Minn. St. c. 256B and implementing state regulations.

§§ 405.403, 405.404, and Minn. Rule DPW 49, III.D.2 (4924b).[3] In its 1973 and 1974 welfare rate applications, Koronis selected a method of cost allocation for laundry, housekeeping, and plant operation expenses which was different from that used in the Medicare rate application filed by the Hospital. The effect was to weigh those common costs more heavily to the Hospital for the Medicare rate determinations and more heavily to Koronis for the Medicaid rate determinations. The Department of Public Welfare rejected this accounting method and required that Koronis utilize the same allocation method as the Hospital so that DPW would not be forced to compensate the Hospital-nursing home complex twice for the same costs.

Koronis appealed from DPW's disallowance of its method of accounting. The appeal was heard by the Appeals Committee, an advisory panel selected by the commissioner of public welfare and established pursuant to Minn. Rule DPW 49. The 1973 appeal resulted in a recommendation that Koronis' costs for laundry, housekeeping, and plant operations should be allocated in accordance with the Medicare formula used by the Hospital, and the commissioner so ruled.

The cost apportionment issue was not settled, however, because Koronis was granted a rehearing in respect to the same matter in the next fiscal year. In addition, Koronis raised a new issue concerning its provider welfare rate as affected by the maximum rate limitation established in Minn. Rule DPW 49, II.D.2 (4914b). That section fixes rate ceilings at a maximum of 125 percent of regional average rates and provides:

"* * * Regions will be those areas designated by the Governor for regional planning and economic-development purposes. Regions may be combined when deemed appropriate by the Commissioner as announced through policy bulletins."

To implement this section, DPW consolidated the regions of

---

[3] We have adopted the form of including the unofficial rule citation in parentheses after the official citation.

the state into two groups, rural and urban. The urban region consists of St. Louis County and the seven county metropolitan area surrounding Minneapolis and St. Paul. The remaining counties are placed in the rural region. Thus, Koronis was subject to the maximum rate limitation applicable to a skilled nursing care facility in the rural region. Koronis objected, contending that the groupings by DPW did not make provision for variations in cost within the two regions.

The Appeals Committee, after the second hearing, reaffirmed its position on the cost apportionment issue but declined to make any recommendation regarding the appropriateness and fairness of the 125-percent maximum rate limitation as applied to the two regions. The commissioner concurred with the committee's recommendation on the cost apportionment question and further found that the provision for the 125-percent maximum rate limitation and the establishment of two regions was proper.

From the final agency determination, Koronis appealed to the district court pursuant to Minn. St. 15.0424. After ruling against Koronis, the trial court denied requested amendments of its findings[4] or a new trial, and this appeal followed.

1. Koronis contends that DPW, by its own rules, granted an option to nursing homes to combine certain cost categories and then chose to overrule Koronis' use of this option without showing that its election was an unreasonable one. Plaintiff's argument focuses on Minn. Rule DPW 49, III.D.2.c (4924b 3) which states:

*"Laundry and linen, housekeeping, and plant operation and maintenance.* The following allocation procedures can be applied to individual department costs or the combination of these three departments at the option of the provider.

"(1) Same as 4924b.1.(b)—Time or cost studies.

---

[4] The trial court twice amended its original findings of fact but each time affirmed the commissioner's rulings as lawful, reasonable, and supported by substantial evidence.

"(2)   Allocation on the ratio of square feet of floor space devoted directly to each care level.

"(3)   Same as 4924b.2.(c)—Patient days."

Koronis chose to use option (3) in its accounting procedure and alleges that DPW's denial of that option was unreasonable. DPW explains, however, that it disallowed Koronis' selection of this option because Koronis shared the cost of laundry, housekeeping, and plant operation with the adjacent Hospital, and that costs among multi-level providers must be reasonably allocated in such circumstances. DPW contends that Koronis selected option (3) because that method weighed the costs more heavily to Koronis than to the Hospital and thereby increased Koronis' welfare rate. DPW determined that Koronis must use option (1) for laundry costs and option (2) for housekeeping and plant operation expenses since those were the options used by the Hospital in establishing its Medicare rate. There is no doubt that if the two facilities were allowed to use different formulas there would be overlapping and double reimbursement to the facilities for the same costs.

The trial court found that Koronis' argument that the excessive reimbursement was authorized by DPW Rule 49 ignored the overriding principle that costs incurred by a multi-level facility must be reasonably allocated between the levels of care. The trial court determined that "* * * the allocation formula required by the Department of Public Welfare was a reasonable interpretation of Rule 49 and resulted in a more accurate identification of costs to the two facilities." The court concluded that the recommendations of the Appeals Committee and the commissioner's final determinations were reasonable and lawful applications of Minn. Rule DPW 49.

The question before us is whether DPW was justified in imposing a different cost allocation formula on Koronis in the face of the express provision allowing a nursing home to elect its allocation procedures. We have concluded, as did the trial court,

that DPW had the implicit power to impose reasonable standards so as to effectuate the department's purposes.[5]

Minn. St. 256B.04, subd. 2, provides that the commissioner of public welfare shall:

"Make uniform rules and regulations, not inconsistent with law, for carrying out and enforcing the provisions hereof in an efficient, economical, and impartial manner, and to the end that the medical assistance system may be administered uniformly throughout the state * * *."

Further, Minn. St. 256B.18 provides:

"The state agency shall prescribe such methods of administration as are necessary for compliance with requirements of the social security act, as amended, and *for the proper and efficient operation of the program of assistance hereunder.* * * *" (Emphasis supplied.)

Finally, Minn. Rule DPW 49, IV.A.4 (4931d) states:

*"Substance over form.* The cost effect of transactions that are conceived for the purpose of circumventing the regulations contained in DPW Rule 49 will be disallowed under the principle that the substance of the transaction shall prevail over form."

Based upon the foregoing, and the general principle that programs of this type must be prudently administered, we hold that the accounting requirements imposed by DPW on Koronis were reasonable and appropriate under all the circumstances.

2. The record before us does not support the remaining arguments of Koronis that the maximum rate limitations imposed by the commissioner are unreasonable and capricious, and that the regions established by the commissioner do not adequately reflect differing costs in various areas of the state. The burden is upon Koronis to establish those claims and we agree with the

[5] Minn. Rule DPW 49, III.D.2 (4924b) has been amended so that it now contains the following: "* * * Regardless of method selected, reasonable identification of costs to care level must result."

trial court that it has failed to do so. LaCrescent Constant Care Center, Inc. v. State, 301 Minn. 229, 222 N. W. 2d 87 (1974); Brown v. Wells, 288 Minn. 468, 181 N. W. 2d 708 (1970); State ex rel. Saari v. State Civil Service Board, 265 Minn. 441, 122 N. W. 2d 174 (1963). See, also, Lee v. Laitinen, 152 Mont. 230, 448 P. 2d 154 (1968).

Affirmed.