In the Matter of the Contested Cases of **REM–CANBY, INC.; REM–Fairmont, Inc.; REM–Lyndale, Inc.; REM–Mankato, Inc.; REM–Marshall, Inc.; REM–Monticello, Inc.; REM–Pillsbury, Inc.; REM–Pleasant, Inc.; REM–Redwood Falls, Inc.; REM–Southeast, Inc.; REM–Tyler, Inc.; and REM–Waite Park, Inc.,** petitioners, Relators,

v.

**MINNESOTA DEPARTMENT OF HUMAN SERVICES,**
**Respondent.**

No. C3–92–1021.

Court of Appeals of Minnesota.

Dec. 29, 1992.

As Corrected Jan. 7, 1993.

Review Denied Feb. 25, 1993.

Thomas Darling, Nancy R. Menzel, Olivia W. Walling, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for relators.

Hubert H. Humphrey, III, Atty. Gen., John L. Kirwin, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and SHORT and PETERSON, JJ.

## OPINION

SHORT, Judge.

This matter is before us on a writ of certiorari from a decision by the Commissioner of Human Services (commissioner) establishing per diem reimbursement rates for services provided to mentally retarded residents who receive medical assistance. The twelve intermediate care facilities (providers) argue the commissioner's decision must be reversed because: (1) it improperly placed the burden on the providers of proving their costs were reasonable; (2) the Department of Human Services is estopped from disallowing the providers' expenses; (3) the decision is without record support; (4) it is contrary to law; (5) it is made upon unlawful procedure; and (6) it is arbitrary and capricious. We disagree and affirm.

## FACTS

The providers receive payments from the Department of Human Services (department) for services provided to residents who receive medical assistance. *See generally* 42 U.S.C. § 1396 (1988) (establishing a cooperative federal-state program to provide medical and related care to needy persons); Minn.Stat. ch. 256B (1990 & Supp. 1991) (medical assistance for needy persons in Minnesota). The department established a per diem reimbursement rate by using a mathematical formula consisting of a provider's reasonable costs for the prior year, plus projected increases or decreases in known costs, divided by resident days from the prior year. 12 MCAR § 2.052B.1.a. Only reasonable costs incurred by providers are recoverable under that reimbursement system. 12 MCAR § 2.052D. In this case, the providers' reimbursement rate was: (a) established on the basis of the department's desk audit on cost reports submitted annually by the providers; and (b) adjusted on the basis of subsequent on-site field audits performed by the department to verify the costs reported by the providers. *See* 12 MCAR § 2.052B.2.c. (adjustment for error or omissions).

In July 1985, the department issued a final field audit report disallowing numerous expenses claimed by the providers for the years 1978, 1979 and 1980. After a contested case hearing, an administrative law judge issued findings of fact and conclusions of law, and recommended the commissioner affirm several of the proposed disallowances in calculating the providers' rates. The commissioner issued an order modifying the administrative law judge's report. The providers moved for reconsideration of the commissioner's order, and the commissioner denied that motion. By writ of certiorari, the providers now seek review of the commissioner's decision es-

tablishing their per diem rates for 1978, 1979 and 1980.

## ISSUES

I. Who has the burden of proving a provider's costs are allowable under 12 MCAR § 2.052?

II. Is the department estopped from disallowing the providers' expenses?

III. Was the commissioner's decision supported by substantial evidence in view of the entire record?

IV. Was the commissioner's decision contrary to law?

V. Was the commissioner's decision made upon unlawful procedure?

VI. Was the commissioner's decision arbitrary and capricious?

## ANALYSIS

The standard of review upon writ of certiorari is whether the administrative body exceeded its jurisdiction, proceeded on an erroneous theory of law, or acted arbitrarily, oppressively, and unreasonably. *Haaland v. Pomush*, 263 Minn. 506, 510, 117 N.W.2d 194, 197 (1962). We must uphold the agency's findings if they are supported by substantial evidence in view of the record as a whole. *State v. Sports and Health Club, Inc.*, 370 N.W.2d 844, 848 (Minn.1985), *appeal dismissed*, 478 U.S. 1015, 106 S.Ct. 3315, 92 L.Ed.2d 730 (1986). When reviewing questions of law, however, we are not bound by the agency's decision, and we need not defer to the agency's expertise. *Id.* at 854 n. 17.

### I.

The providers argue they do not bear the burden of proving their disallowed costs were reasonable. We disagree. First, one who seeks to show entitlement under a statutory provision generally has the burden of proof. *See State v. City of White Bear Lake*, 311 Minn. 146, 150, 247 N.W.2d 901, 904 (1976) (applicant for relief, privilege, or the benefits of a statute generally has the burden of proof). Second, all information regarding the providers' costs

lies peculiarly within their own knowledge. *See United States v. New York, N.H. & Hartford R.R.*, 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 214–15 n. 5, 2 L.Ed.2d 247 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."). And third, our decision is consistent with placement of the burden of proof on providers in cases involving rates for nursing home providers. Minn.Stat. § 256B.431, subd. 2 (1990); *see Koronis Manor Nursing Home v. Department of Pub. Welfare*, 311 Minn. 375, 380–81, 249 N.W.2d 448, 451 (1976) (providers bear the burden of proof to substantiate their costs in rate appeals). Under these circumstances, the commissioner's decision properly placed on the providers the burden of proving their disallowed costs were reasonable.

### II.

Estoppel is an equitable doctrine addressed to the trial court's discretion, and which is not freely applied against the government. *Brown v. Minnesota Dep't of Pub. Welfare*, 368 N.W.2d 906, 910 (Minn.1985). To establish a claim of equitable estoppel against the government, the providers must prove: (a) the government made a misrepresentation of a material fact; (b) the government knew the representation was false; (c) the government intended that its representation be acted upon; (d) the providers did not know the facts; and (e) the providers relied upon the government's misrepresentation to their detriment. *Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978). Affirmative misconduct, rather than simple inadvertence, mistake, or imperfect conduct is required for estoppel to be applied against the government. *Mesaba Aviation Div. v. County of Itasca*, 258 N.W.2d 877, 880–81 (Minn.1977); *In re Westling Mfg., Inc.*, 442 N.W.2d 328, 332 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 25, 1989). When deciding whether estoppel will be applied against the government, the court will weigh the public interest frustrated by

the application of estoppel against the equities of the case. *Brown*, 368 N.W.2d at 910.

■ The providers argue the commissioner should be estopped from disallowing certain costs the department previously allowed in its desk audits. We disagree. The record demonstrates: (a) the advice regarding the netting of known cost increases and decreases was correct; (b) the providers did not act on the agent's advice regarding increases or decreases; (c) the two-step audit process made any previous reliance on the lack of a desk audit adjustment unreasonable; (d) depreciation expenses were explained in 12 MCAR § 2.052B.1.c.(1), D.; (e) the providers' position would permit them to report more depreciation than the total cost of the assets at issue; and (f) the providers' pass-through treatment would give them a benefit to which they are not entitled under 12 MCAR § 2.052. Under these facts, the providers failed to establish any element of an estoppel claim against the government.

### III.

The providers argue there is absolutely no basis in the record for disallowing costs of $5,529.45 for in-state airfare, $1,003.94 for business meals, $14,508.22 for out-of-state training, and $8,385.05 for graduate school and foreign education seminar expenses. We disagree. 12 MCAR § 2.052D provides:

Costs to be allowable for rate-setting purposes must satisfy the following overall criteria:

(1) They must be necessary and ordinary costs related to resident care.

(2) They must be costs that prudent and cost-conscious management would pay for a given item or service.

### A. In–State Airfare Expenses

■ The providers chartered airplanes to transport personnel between their central offices and out-state facilities. With the exception of four trips involving emergencies or scheduling conflicts, the commissioner disallowed air transportation expenses as not necessary or ordinary costs that prudent management would incur. The commissioner found: (a) automobile travel was the most cost-effective method of transportation; and (b) the per diem reimbursement rates paid to the providers included reimbursement for depreciation of a number of automobiles. The providers failed to produce any specific evidence rebutting these findings. Under these circumstances, the commissioner's finding that the disallowed in-state airfare expenses were unreasonable is supported by substantial evidence.

In the alternative, the providers claim the amount of the airfare disallowance must be reduced by an amount reflecting the reasonable cost of automobile transportation. However, the providers again failed to offer evidence to meet their burden of proof on this issue. In view of the entire record, we cannot say the commissioner's decision to refuse to speculate on automobile transportation costs is erroneous.

### B. Business Meals and Meeting Expenses

■ After conducting a field audit, the commissioner disallowed costs incurred by the providers for numerous lunches and meetings under the reasonable cost principles of 12 MCAR § 2.052D.1.a., b. The providers argue their principal's testimony that these costs were business-related is sufficient to compel reimbursement. We disagree. The providers failed to produce any specific evidence tying the costs of those meals and meetings to the facilities' prudent operation. Blanket testimony of a self-serving nature is inadequate to refute the commissioner's amply supported findings.

### C. Conferences and Seminars

■ The commissioner disallowed expenses for several out-of-state conferences, graduate courses, a tour of Scandinavian homes for the mentally retarded, and a course in real estate transactions because the providers presented no persuasive evidence that those costs were related to providing improved resident care. We are not

in a position to reweigh conflicting evidence. *State ex rel. Spurck v. Civil Serv. Bd.*, 226 Minn. 240, 248–49, 32 N.W.2d 574, 580 (1948). After reviewing the record, we conclude the commissioner's disallowance of costs incurred for conferences, seminars and international tours is supported by substantial evidence.

### IV.

■ The providers argue the commissioner's decision to disallow certain costs for: (a) utilization reviews and employee physicals; (b) depreciation expenses; and (c) out-state travel and business meals violates 12 MCAR § 2.052. We disagree. First, the commissioner denied an exception in the fifteen percent overall rate limitation for physical examinations of replacement employees and utilization reviews conducted by independent contractors who were not employees. *Cf. Mapleton Community Home, Inc. v. Minnesota Dep't of Human Servs.*, 391 N.W.2d 798, 801 (Minn.1986) (department properly interpreted "rate limitations in effect" language regarding adjustments to property-related costs reported by nursing homes). Second, the commissioner's decision on depreciation expenses was based on the fact that a known cost increase as a result of depreciation has a corresponding cost decrease at the end of the asset's useful life. And third, the commissioner's decision on out-state travel and business expenses was based on its determination of "reasonable," as opposed to "documented" expenses. None of these decisions by the commissioner is based on an error of law or is contrary to 12 MCAR § 2.052.

The providers also argue the commissioner's interpretation of 12 MCAR § 2.052 constitutes an invalid, unpromulgated rule. The providers' failure to timely raise this issue precludes our review. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) ("orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has an opportunity for correction"); *Fingerhut Prods. Co. v. Commissioner of Revenue*, 258 N.W.2d 606, 608 n. 4 (Minn.1977) ("we will not consider issues raised for the first time on appeal").

### V.

■ Parties to an administrative proceeding are entitled to a decision by an unbiased decision maker. *See Urban Council on Mobility v. Minnesota Dep't of Natural Resources*, 289 N.W.2d 729, 736 (Minn.1980) (due process not violated so long as decision maker remains unbiased). There is a presumption of administrative regularity, and the party claiming otherwise has the burden of proving the commissioner reached a decision improperly. *See No Power Line, Inc. v. Minnesota Envtl. Quality Council*, 262 N.W.2d 312, 325 (Minn.1977) ("Although the judiciary has the responsibility of ensuring that administrative agencies comply with legislative mandates, a presumption of administrative regularity exists.").

The providers argue the field auditors acknowledged they were looking for errors when they reviewed the providers' 1978–80 cost reports. That argument is immaterial because we do not review the field auditors' decisions, and neither the administrative law judge nor the commissioner made any findings of bias.

The providers also argue: (a) there were inadequate screening mechanisms in the attorney general's office to separate the advocate attorneys from those attorneys who advised the commissioner; and (b) an adviser to the commissioner was hostile toward them. However, the providers failed either to raise these alleged procedural irregularities below or to demonstrate they learned of the alleged irregularities so long after the agency proceedings concluded that they were unable to raise the issues before the agency. *Cf. In re Application for Combined Air & Solid Waste Permit*, 483 N.W.2d 105, 107 (Minn. App.1992) (further discovery on appeal not appropriate where relators failed to establish that they learned of the alleged procedural irregularities so long after the agency proceedings had concluded that they were unable to raise the issue before the

agency). Under these circumstances, the issues are not properly before us.

## VI.

█ The providers also argue the commissioner's decision should be reversed because it is arbitrary and capricious. *See* Minn.Stat. § 14.69(f) (1990) (scope of judicial review). An agency decision is arbitrary and capricious when it represents the agency's will and not its judgment. *Markwardt v. State, Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn.1977). Because there is no showing that the commissioner's decision here represents the department's will and not its judgment, it is not arbitrary or capricious.

## DECISION

The providers failed to demonstrate the disallowed costs were reasonable or to establish affirmative misconduct on the part of the department in conducting the desk or field audits. In addition, the commissioner's decision establishing a per diem rate for the providers is supported by substantial evidence, is not based on an erroneous theory of law, was not made upon unlawful procedure, and is not arbitrary and capricious.

Affirmed.