**STATE of Minnesota ex rel. Ellyn QUIRING, Relator,**

v.

**BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 173, MOUNTAIN LAKE, MINNESOTA, Respondent.**

No. C8–00–1496.

Court of Appeals of Minnesota.

March 20, 2001.

Dale G. Swanson, Forest Lake, MN, (for relator).

Gloria B. Olsen, Marie C. Skinner, Knutson, Flynn, Deans & Olsen, P.A., Mendota Heights, MN, (for respondent).

Considered and decided by RANDALL, Presiding Judge, PETERSON, Judge, and SHUMAKER, Judge.

## OPINION

RANDALL, Judge

The school board placed relator on unrequested leave of absence under Minn.Stat. § 122A.40, subd. 11 (2000) based on the ground that it eliminated her position as principal. Relator contends that the position was not eliminated because other employees now perform her duties. She also argues respondent's reorganization scheme was arbitrary and capricious and that its ability to reorganize was limited by the teachers' continuing contract rights. We affirm.

## FACTS

Relator Ellyn Quiring was hired as a teacher in 1970 by respondent Board of Education of Independent School District No. 173, Mountain Lake, Minnesota (school board) and has continuing contract rights under Minn.Stat. § 122A.40, subd. 7 (2000). Quiring became a lead teacher in 1991 and an elementary principal in 1997. She was a full-time elementary principal during the 1999–2000 school year.

During the 1999–2000 school year, the district's administrative staff included a full-time elementary principal (1.0 full-time equivalency (F.T.E.)), a part-time secondary principal (.4 F.T.E.), a part-time superintendent (.6 F.T.E.), and a full-time community education director (1.0 F.T.E.). Quiring was the elementary principal and William Strom, who is a fully licensed superintendent and secondary and elementary principal without continuing contract rights, was the part-time secondary principal and part-time superintendent. K–12 education is located in one building for the school district.

Anticipating a budgetary shortfall of approximately $676,000, declining state revenue, no general fund reserve, and declining enrollment for the 2000–2001 school year, the school board decided to reorganize the administrative staff and discontinue the principal positions and community education director position, leaving only the superintendent position. Strom became the full-time superintendent, which included performing many of the duties previously performed by Quiring, the community education director, and Strom in his former secondary principal position. Other duties, previously performed by Quiring and the secondary principal, are now performed by the licensed school nurse, teachers, a contracted special education director, and an administrative assistant to the superintendent.

The school board proposed to place Quiring on unrequested leave of absence (ULA) on May 31, 2000. Their sole ground for placing Quiring on ULA was because her principal position was eliminated. As a continuing contract teacher, Quiring was then offered a full-time teaching position for the 2000–2001 school year. Quiring requested a hearing, which took place before an independent hearing officer on June 30, 2000.

The hearing officer submitted his proposed findings of fact, conclusions, and recommendation to place Quiring on ULA, which the school board adopted. After receiving notice of the school board's decision, Quiring petitioned this court for a writ of certiorari.

### ISSUE

1. Did the school district properly discontinue Quiring's principal position?

2. Did the school board subcontract the duties of both principals, thereby terminating Quiring's bargaining unit without negotiations?

3. Is Minn.Stat. § 122A.40, subd. 11 (2000) the controlling authority for the school board's reorganization of its administrative structure?

### ANALYSIS

 A school district acts in an administrative capacity when making personnel decisions. *Beste v. Independent Sch. Dist. No. 697*, 398 N.W.2d 58, 60 (Minn. App.1986). This court will reverse a school board's decision to terminate a teacher only if that decision was

> fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction or is based on an erroneous theory of law.

*Ganyo v. Independent Sch. Dist. No. 832*, 311 N.W.2d 497, 500 (Minn.1981) (citations omitted). A court in a school case "is not at liberty to hear the case de novo and substitute its findings for those of the school board." *Kroll v. Independent Sch. Dist. No. 593*, 304 N.W.2d 338, 342 (Minn. 1981).

### I. Discontinuance of Position

 Quiring argues the school board did not actually discontinue the principal positions since the duties performed by Quiring and the secondary principal were reassigned to Superintendent Strom and various people in other positions with less seniority than Quiring. Because the duties of both principals continue to be performed by employees in the district, Quiring asserts this is, at minimum, a partial discontinuance rather than a full discontinuance and she is therefore "entitled to the substantial fractional part of [a principal position] which remains" because of her continuing contract rights.

Teachers' ULA rights are governed by Minn.Stat. § 122A.40, subd. 11 (2000). A school board has authority to place teachers on ULA because of discontinuance of position, lack of pupils, financial limitations, or merger of classes due to district consolidations. *Id.* When a teacher's services are terminated for such reasons, the teacher "must receive first consideration

for other positions in the district for which that teacher is qualified." Minn.Stat. § 122A.41, subd. 14(a) (2000). Further, teachers with continuing contract rights who are placed on ULA must be reinstated to positions for which they are licensed in inverse order of placement on ULA if the position from which they were placed on ULA is not available. Minn.Stat. § 122A.40, subd. 11(e).

Here, the school board complied with all statutory requirements for placing Quiring on ULA. The May 15, 2000, school board minutes show that the board decided to discontinue the elementary and secondary principal positions because of declining enrollment and financial conditions. They then placed Quiring and Strom on ULA for these positions. After placing Quiring on ULA, they reassigned her to a full-time elementary teaching position and placed Strom in a full-time superintendent position for which he is licensed. Quiring could not be reinstated to a principal position that no longer exists. The school board complied with statutory requirements by reinstating Quiring as an elementary teacher, for which she is licensed and is in inverse order of positions from which she was placed on ULA.

Citing *State ex rel. Dreyer v. Board of Educ.*, 344 N.W.2d 411 (Minn.1984), Quiring argues that because the duties of both principals are now assumed by Superintendent Strom as part of his duties, the school board's actions actually amount to a partial discontinuance of the principal positions. Based on this analysis, Quiring believes that she is entitled to the part-time principal position since she has continuing contract rights, holds a license for the position, and has seniority over Strom. Quiring's reliance on *Dreyer* is misplaced.

In *Dreyer*, the school board reduced a full-time principal position to half time and offered Dreyer either a full-time teacher position or a half-time principal position. *Id.* at 412. The court determined that the school board's decision not to hire Dreyer as a half-time principal and half-time

teacher must be based on sound educational policy. *Id.* at 414. In this case, however, Mountain Lake eliminated *all* principal positions. There is no part-time principal position available for Quiring. We conclude that elimination of a position does not legally require that all of the duties of that position cease to exist.

The school board properly discontinued Quiring's elementary principal position. Because there is no part-time principal position for Quiring to assume, the school board honored Quiring's continuing contract rights by reassigning her to a full-time elementary teacher position.

## II. Subcontracting and Terminating Bargaining Unit

Quiring argues the school board arbitrarily and capriciously reorganized the district administration under an erroneous theory of law by contracting out the duties of both principal positions, which in turn terminated Quiring's bargaining unit without negotiations. Quiring claims that the duties of both principal positions were contracted out to various employees because (1) Strom was terminated as secondary principal and hired as full-time superintendent on May 15, 2000; and (2) the former unlicensed K–12 counselor was rehired as administrative assistant to the superintendent about two-and-a-half weeks after Quiring's hearing and a month before the final decision to place Quiring on ULA. Essentially, due to the timing of these actions, Quiring asserts the school board arbitrarily and capriciously avoided giving her bargaining unit notice to negotiate a result when they contracted out the duties of both principal positions.

Generally, failure to raise an issue in an administrative proceeding precludes review on appeal. *REM–Canby, Inc. v. Minnesota Dept. of Human Servs.*, 494 N.W.2d 71, 76 (Minn.App.1992), *review denied* (Minn. Feb. 25, 1993). Quiring makes no reference to the record regarding these issues being raised below nor

does she cite any law supporting her belief that she is entitled to raise these issues. In addition, after the hearing officer issued his findings of fact and conclusions of law on the record, Quiring failed to object or otherwise clarify the hearing officer's perception of the issue. *See id.* (stating objections required while agency has opportunity to correct). Quiring did not adequately raise the issue, and therefore it is waived on appeal. Had Quiring raised this issue below, however, her argument would fail on its merits.

■ Statutorily, a principal position is discretionary, whereas a superintendent position is mandatory. *See* Minn.Stat. § 123B.147, subd. 1 (2000) (stating each public school building *may* be supervised by principal); *see also* Minn.Stat. § 123B.143, subd. 1 (2000) (stating all districts with classified secondary school *must* have superintendent). A principal position is under the supervision of the superintendent. Minn.Stat. § 123B.147, subd. 3. Further, the superintendent's duties include those prescribed by the board, in addition to the regular superintendent duties outlined in Minn.Stat. § 123B.143, subd. 1. Based on these statutes, school boards retain discretion in assigning duties to the superintendent; therefore, this school board can assign any of Quiring's former principal duties to Superintendent Strom.

■ In *Foley Educ. Assoc. v. Independent Sch. Dist. No. 51*, 353 N.W.2d 917 (Minn.1984), the school board placed licensed teachers who supervised study halls on ULA and assigned non-licensed employees as study-hall supervisors without negotiating with the teachers' bargaining unit. *Foley* differs from this case in that the Mountain Lake principal positions were eliminated, rather than reassigned like the study-hall positions in *Foley*. *Foley* states that contracting out is not an inherent managerial decision, which is therefore subject to collective bargaining. *Id.* at 923. This case, however, is not a situation of contracting out, but rather the

school board reorganizing the organizational structure, which is a matter of inherent managerial policy, therefore not requiring negotiation. Minn.Stat. § 179A.07, subd. 1 (2000). Quiring's bargaining unit was not arbitrarily and capriciously exterminated under an erroneous theory of law.

### III. Controlling Authority on Reorganization of Administrative Structure

Quiring argues that because this case involves a continuing contract employee, the school board's discretion to reorganize the administrative structure by reducing the workforce is strictly limited and controlled by the provisions of Minn.Stat. § 122A.40, subd. 11 rather than Public Employment Labor Relations Act (PELRA), Minn.Stat. § 179A (2000).

■ While the school board does have discretion to reorganize the administrative structure of the school district under the PELRA, it must consider the continuing contract rights of the individuals in the process of a ULA. *See* Minn.Stat. § 122A.40, subd. 11(h) (stating ULA "must not impair the continuing contract rights of a teacher").

■ PELRA states:

A public employer is not required to meet and negotiate on matters of inherent managerial policy. Matters of inherent managerial policy include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, *the organizational structure, selection of personnel, and direction and the number of personnel.* No public employer shall sign an agreement which limits its right to select persons to serve as supervisory employees or state managers under section 43A.18, subdivision 3, or requires the use of seniority in their selection.

Minn.Stat. § 179A.07, subd. 1 (2000) (emphasis added). Quiring's employment contract with the district restates this PELRA provision. It also states that the "School Board has the obligation and the right to efficiently manage and conduct the operation of the School District within its legal limitations." Reorganizing the administrative structure by discontinuing the statutorily discretionary principal positions, because of budgetary restrictions and declining enrollment, falls within the statutory and contractual rights of the school board.

The school board honored the continuing contract rights of Quiring in the process of the reorganization. Under Minn.Stat. § 122A.40, subd. 11(b), continuing contract teachers are to be placed on ULA "in fields in which they are licensed in the inverse order in which they were employed." Not having another principal position for Quiring to have and Quiring not being licensed as a superintendent, the school district placed Quiring in a full-time elementary teaching position, which complied with the statutory requirements of her continuing contract rights.

Relying on *Klein v. Board of Educ.*, Quiring argues the school board cannot allow Superintendent Strom, a junior employee, to bump Quiring from her job. *Klein v. Board of Educ.*, 497 N.W.2d 620 (Minn.App.1993), *review granted* (Minn. May 18, 1993) *and appeal dismissed* (Minn. Jul. 28,1993). In 1992, Klein's principal position was statutorily mandated. *See* Minn.Stat. § 123.34, subd. 10 (1992) (stating "[e]ach public school building * * * in an independent school district *shall* be under the supervision of a principal") (emphasis added). A junior employee who was hired to be half-time principal and half-time superintendent bumped Klein from his principal position. *Klein*, 497 N.W.2d at 622. Quiring's reliance on *Klein* is misplaced because the statute in effect at the time of Quiring's placement on ULA provides that principal positions are not statutorily mandated. *See* Minn. State § 123B.147, subd. 1 (stating "[e]ach public school building * * * in an independent district *may* be under supervision of a principal") (emphasis added).[1] Further, there was no part-time principal position for Quiring to occupy. Strom did not bump Quiring from the principal position since he is the superintendent.

 The school board's discretion to reorganize the administrative structure by eliminating both principal positions was handled properly under PELRA and Minn.Stat. § 122A.40, subd. 11.

### DECISION

Considering the district's financial situation, the school board's decision to discontinue Quiring's principal position, place her on ULA, and reassign her to a full-time teaching position was not arbitrary or unreasonable and was not based on an erroneous theory of law.

**Affirmed.**

---

1. Minn.Stat. § 123B.147, subd. 1 was previously numbered § 123.34, subd. 10.